STATE OF NEBRASKA EX REL. ACME RUG CLEANER, INC., AND ROGER W. PETTIT, RELATORS, v. HONORABLE MARY G. LIKES, JUDGE, DISTRICT COURT FOR DOUGLAS COUNTY, NEBRASKA, RESPONDENT.

588 N.W. 2d 783

Filed January 29, 1999.　No. S-97-1160.

Thomas J. Culhane and Kevin R. McManaman, of Erickson & Sederstrom, P.C., for relators.

E. Terry Sibbernsen and Mandy L. Stringenz, of E. Terry Sibbernsen, P.C., for amicus curiae Jayne Kanger.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The relators, Acme Rug Cleaner, Inc., and Roger W. Pettit, seek a writ of mandamus, compelling the district court to vacate its overruling of their motion to quash a subpoena duces tecum. We granted leave to file this original action and now issue a peremptory writ of mandamus.

## FACTS

Jayne Kanger sued Acme Rug Cleaner, Inc., and Roger W. Pettit (collectively referred to as Acme) in Douglas County District Court. On October 9, 1997, as part of pretrial discovery, Kanger served notice of her intent to take the deposition of Dr. Joel Cotton, a physician who was to testify on behalf of Acme as an expert witness. A subpoena duces tecum was served, directing Cotton to produce certain information and materials at the time of his scheduled deposition. In response, Acme moved to quash the subpoena and requested a protective order. Acme objected to paragraphs 5, 6, and 7 of the subpoena for the reason that the items requested therein were not relevant or material and would be unduly burdensome and expensive to produce. The paragraphs at issue requested the following:

> 5. The names of all individuals that you have examined on behalf of insurance carriers or defense attorneys within five (5) years preceding this deposition.
>
> 6. The amount of charges for each individual as set forth in No. 5 above.
>
> 7. The names of any case, the court case number, the name of the person examined, and the names of the attorneys involved and charges for any deposition or court testimony within a period of five (5) years preceding October 21, 1997.

At the hearing on the motion to quash, Acme offered the affidavit of Karen Breen, office manager for Cotton's medical partnership. The relevant part of the affidavit stated:

3. The subpoena requests the names of all individuals who have been examined on behalf of insurance carriers or defense attorneys within the last five years by Dr. Cotton. Our office opens approximately 3,500 new patient files every year. New files are not opened under a particular doctor's name and no separate record is kept of those files which are opened for the purpose of an examination requested by an insurance carrier or defense attorney. To ascertain the information requested in paragraphs 5 and 6 of the subpoena it would be necessary to review the contents of each file opened by this office during the last five years to determine whether it involved an examination on behalf of an insurance carrier or defense attorney.

4. I have also reviewed paragraph 7 of the subpoena, which requests the court case number, the name of the person examined, and the names of the attorneys involved and charges for any deposition or court testimony given by Dr. Cotton within the last five years. Our office does not maintain separate records of court or deposition testimony given by Dr. Cotton during the last five years. It would not be possible to ascertain the information requested without a review of each patient file opened during the last five years, with the exception that our office has maintained a list, by date and patient name, which shows those patients with regard to whom Dr. Cotton has testified by deposition or at trial since July 1, 1996.

The district court judge overruled Acme's motion to quash and for a protective order. Cotton declined to further participate or testify as an expert witness rather than produce the information specified in paragraphs 5, 6, and 7 of the subpoena, and his deposition was canceled. We granted Acme's application to file an original action for a peremptory writ of mandamus compelling the judge to vacate her order overruling the motion to quash and for a protective order. We also granted an alternative writ of mandamus, ordering the judge to show cause why a peremptory writ should not be issued, and we stayed the underlying proceedings. The judge reaffirmed her prior order, and subsequently, a hearing was held in front of a special master for findings of fact relevant to Acme's petition for writ of man-

damus. At the hearing, in addition to Breen's affidavit, Cotton's affidavit was offered, which adopted Breen's explanation regarding the difficulty in obtaining the requested information.

The special master found:

> Dr. Cotton's medical partnership office opens approximately 3,500 new patient files every year. New files are not opened under a particular doctor's name, and no separate record is kept of those files which are opened for the purpose of an examination requested by an insurance carrier or defense attorney. To ascertain the information requested in paragraphs 5 and 6 of the subpoena, it would be necessary for someone to review the contents of each file opened by the partnership during the last five years, a total of approximately 17,500 files, to determine whether the file involved an examination at the request of an insurance carrier or defense attorney.

Further, the special master found that Cotton's office had not made separate records regarding court and deposition testimony given by Cotton during the prior 5 years or regarding the names of individuals examined on behalf of insurance carriers or defense attorneys and that it would not be possible to ascertain the information requested in paragraphs 5, 6, and 7 of the subpoena without a review of each patient file opened during the prior 5 years. An exception was that Cotton's office has maintained a list, by date and patient number, which shows those patients with regard to whom Cotton has testified by deposition or at trial since July 1, 1996. No showing was made that it would have been impossible or impractical for Acme to obtain the services and testimony of another physician willing to comply with the requirements of the subpoena.

## ASSIGNMENTS OF ERROR

Acme contends, in summary, that the district court erred in failing to grant the motion to quash and in failing to issue a protective order pursuant to Neb. Ct. R. of Discovery 26(c) (rev. 1996). Acme asserts that mandamus is the only adequate remedy and that unless the subpoena is quashed or a protective order issued limiting the scope or methods of discovery, Cotton will refuse to testify rather than attempt to comply with the subpoena.

## ANALYSIS

Mandamus is an action at law and is an extraordinary remedy issued to compel performance of a purely ministerial act or duty imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. *State ex rel. Fick v. Miller*, 255 Neb. 387, 584 N.W.2d 809 (1998).

Rule 26 sets forth the general provisions governing discovery. Under rule 26(b)(1),

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Under rule 26(c),

> [u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the district court in the district where the deposition is to be taken, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the discovery not be had;
>
> . . . .
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters[.]

Generally, the control of discovery is a matter for judicial discretion. *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991). We have more specifically stated that a trial court has discretion in the matter of discovery where material is sought for impeachment purposes. *State v. Cisneros*, 248 Neb. 372, 535 N.W.2d 703 (1995). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is clearly untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Bondi v. Bondi*, 255 Neb. 319, 586 N.W.2d 145 (1998); *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998).

The subpoena duces tecum requests documentation regarding all individuals Cotton has examined on behalf of insurance carriers and for defense attorneys within the past 5 years; the charges therefor; and the names and numbers of cases, the persons examined, and the attorneys involved. This information is sought for purposes of discovering bias which might affect Cotton's credibility as an expert witness.

In our determination of whether mandamus applies to an issue of discovery, we consider whether the trial court clearly abused its discretion in not quashing the subpoena or issuing a protective order which limited the nature of the discovery. Whether the trial court abused its discretion is determined by whether Acme has a clear legal right to the relief sought and whether there is a corresponding duty on the part of the trial court to quash or limit the scope of the discovery. Absent a clear legal right, the trial court's refusal to quash the subpoena is left to the discretion of the court. In addition, Acme must establish that it has no other plain and adequate remedy available.

In *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995), we issued a peremptory writ of mandamus, directing the trial court to vacate its order denying FirsTier's motion to compel discovery and to sustain FirsTier's motion to

compel discovery. FirsTier sought discovery of a fee arrangement between the law firm which had been disqualified from representing the relator and the relator's successor counsel. The question of whether the disqualified firm was participating with successor counsel was highly relevant to a pending action. We explained that the trial court had a clear and absolute duty to allow the discovery requested. We noted that although the discovery order could be reviewed from a final judgment, such remedy was inadequate because to wait for an appeal on the issue would mean that any divulgences of relevant confidences and secrets of disqualified counsel would have already occurred and the parties thus could not be returned to the status quo.

Heretofore, we have not addressed whether a writ of mandamus will lie to direct a trial court to quash a subpoena and issue a protective order on the basis that the requested discovery constitutes an undue burden upon the witness. An examination of cases from other jurisdictions is helpful to our analysis.

In *Syken v. Elkins*, 644 So. 2d 539 (Fla. App. 1994), the plaintiff sought, inter alia, to compel the defendant's expert witness physician to produce documentation of income earned by the expert from independent medical exams (IME's) since January 1, 1990; the percentage of IME income relative to private patient income since January 1; the number of IME's performed for insurance carriers and defense attorneys since January 1; the amount charged for IME's; and the number of impairment ratings, court appearances, and attorney conferences since January 1990, and the charges for these.

In response, the physician stated that his patient files were kept alphabetically and would have to be reviewed individually in order to gather the requested information. Prior to the hearing, the physician submitted a notarized affidavit which stated in part that on an average he saw 15.33 patients per day, of which 1.5 were seen for performing IME's. He worked approximately 48 weeks per year and estimated that he saw 2,944 patients, of which 288 were for IME's. The average charge for an IME was $500, and a reasonable estimate of his income from IME's was $144,000 per year. At a hearing on the defendant's motion for a protective order, the physician stated that his patient files numbered some 15,000 in the past 25 years, and he

objected to the burden imposed and claimed that his 1099 forms were not probative. After the hearing, the trial court required the compilation of reports, the implementation of new procedures for recording IME's, the creation of new documents evidencing the time spent on IME's, and the production of the physician's tax forms for the last 3 years.

The appellate court accepted certiorari to harmonize divergent opinions of the court involving the scope of discovery reasonably necessary to impeach the testimony of an opponent's medical witness. While the discovery rules were broadly written so as to allow discovery of any relevant matter not privileged, the appellate court noted that in the context of medical expert witnesses, the courts in Florida have long held that the trial court must balance the competing interests of the relevancy of the discovery information sought as impeachment against the burdensomeness of its production. En banc, the court concluded that to demonstrate the probability of bias, it was sufficient for a physician to give an honest estimate of IME's and total patients seen in a year, and not an exact number. The court reasoned that a doctor should not be required to disclose the amount of money he or she earned from expert witness work or disclose total income.

The appellate court set forth the following guidelines:

[D]iscovery of an opposing medical expert for impeachment is limited by the following criteria:

1. The medical expert may be deposed either orally or by written deposition.

2. The expert may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be.

3. The expert may be asked what expert work he or she generally does. Is the work performed for the plaintiffs, defendants, or some percentage of each?

4. The expert may be asked to give an approximation of the portion of their professional time or work devoted to service as an expert. This can be a fair estimate of some reasonable and truthful component of that work, such as hours expended, or percentage of income earned from that source, or the approximate number of IME's that he or she

performs in one year. The expert need not answer how much money he or she earns as an expert or how much the expert's total annual income is.

5. The expert may be required to identify specifically each case in which he or she has actually testified, whether by deposition or at trial, going back a reasonable period of time, which is normally three years. A longer period of time may be inquired into under some circumstances.

6. The production of the expert's business records, files, and 1099's may be ordered produced only upon the most unusual or compelling circumstance.

7. The patient's privacy must be observed.

8. An expert may not be compelled to compile or produce nonexistent documents.

*Syken v. Elkins*, 644 So. 2d 539, 546 (Fla. App. 1994).

The appellate court concluded that the data suggested by its guidelines would normally be sufficient to show the jury the expert's background and orientation and that the opponent could with minimal cross-examination make it perfectly clear to a jury that "a defense doctor testifies as a defense doctor, and [a] plaintiff's doctor testifies as a plaintiff's doctor, and that each may spend considerable time doing just that." *Id.* at 547. The court noted that if it were disclosed that the witness had falsified or misrepresented the required data, the witness could be excluded from testifying and receive other sanctions, and that discretion to vary the guidelines could be exercised where appropriate.

*Unit Rig & Equipment Co. v. East*, 514 P.2d 396 (Okla. 1973), was an original action to prohibit the enforcement of an order directing the defendant's medical expert to appear with certain records so that the plaintiff's attorney could take his deposition. The court held that the plaintiff was entitled to take the deposition and examine the records of the defendant's medical expert who had examined the plaintiff as long as they did not require the doctor to violate his patient-physician relationship with other patients.

In *Jones v. Bordman*, 243 Kan. 444, 759 P.2d 953 (1988), the Supreme Court of Kansas held that the denial of a motion to quash a subpoena duces tecum for a witness' medical and tax

records was improper. The plaintiffs had sought to obtain extensive documentary materials from the defendant's medical expert, including all medical reports made by him for the past 6 years, income tax returns, and a list of all cases in which he served as an expert witness for the defendant's attorneys.

Kansas law permitted the discovery of material that was reasonably calculated to lead to the discovery of admissible evidence. However, the court opined that the medical records pertaining to persons who were not parties to the action were not relevant and, therefore, inadmissible. The court stated that it was proper to ask what percentage of a physician's practice involved examining, diagnosing, and/or testifying for defendants and what amount the physician was paid for such work. A showing of bias or prejudice did not require that the details of those medical reports be disclosed, and the law did not contemplate the discovery of medical records of persons who were not parties to the lawsuit for the sole purpose of obtaining evidence which might show a bias or prejudice. Since the information sought did not appear reasonably calculated to lead to the discovery of admissible evidence, the subpoena was not allowed.

In *Allen v. Superior Court of Contra Costa County*, 151 Cal. App. 3d 447, 198 Cal. Rptr. 737 (1984), the appellate court held that the trial court had erred in granting a subpoena duces tecum requiring a medical expert witness appearing for the defendant to produce, among other things, records of any kind that would reveal what portion of the doctor's total income was from treatment of patients, as opposed to evaluation of persons for defense for the prior 5 years; records related to depositions in cases over the prior 5 years when he was asked by the defense to examine someone; and all reports of examinations and evaluations prepared at defense request over the prior 5 years.

Concluding there was no showing that the information sought could not be obtained through other means, such as by conducting a deposition without the production of records, the appellate court found that the trial court had abused its discretion when it failed to require a less intrusive method of discovery. The appellate court stated that the medical expert could be asked questions directed toward disclosing what percentage of his practice involved examining patients for defense and how

much compensation he derived from defense work. To show bias or prejudice, the party seeking discovery need not learn the details of the expert's billing and accounting or other specifics of his prior testimony and depositions. Exact information as to the number of cases and amounts of compensation paid to medical experts was unnecessary for the purpose of showing a bias. The court thus issued a "writ of mandate" to protect the witness.

In *Davis v. Hinde*, 141 Ill. App. 3d 664, 490 N.E.2d 1049 (1986), the court held that the defendant in a personal injury action was not entitled to discover a list of names and addresses of clients of plaintiff's attorney who had been treated by plaintiff's physicians for the past 3 years. Despite the contention that the names were needed for purposes of showing bias and attacking the credibility of the physician, the request was too broad and should have been limited to the number and frequency of referrals and any financial benefit derived therefrom.

From our examination of the above cases, we conclude that the trial court must balance the competing interests and the relevance of the information sought by discovery for impeachment purposes against the burdensomeness of its production. This reasoning is used in our consideration of whether the trial court had a clear legal duty to limit the discovery and whether Acme had a corresponding legal right. Rule 26 recognizes the balancing of such interests. Parties may obtain discovery regarding any matter, not privileged, which is relevant, and the district court may make any order which justice requires to protect a party from undue burden or expense. See rule 26(b)(1) and (c).

Kanger has a right to discover information that might impeach Acme's expert witness. Acme has a corresponding right to choose its expert witness and not have such witness burdened to the extent that the witness will refuse to testify. The district court's refusal to balance such interests and establish guidelines for the discovery was an abuse of discretion. The clear legal right to have the discovery limited and the failure of the trial court to perform its duty by limiting the discovery establishes the first two criteria for a peremptory writ of mandamus. In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is

legally obligated to act. *State ex rel. Fick v. Miller*, 255 Neb. 387, 584 N.W.2d 809 (1998); *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995).

With regard to whether Acme has an adequate remedy at law, we note that Acme failed to establish that it could not proceed without the use of its designated expert or that it was impossible to obtain the testimony of another physician who was willing to comply with the subpoena. However, we conclude that under the facts of this case, no other remedy was available to Acme because no other remedy would prevent Acme from losing the expert of its choice. Because Acme had a clear legal right to a protective order, the trial court had a clear duty to issue such protective order, and because there is no other plain and adequate remedy available in the ordinary course of the law, mandamus will lie to protect Acme's expert witness from the extensive discovery sought in this case.

With regard to discovery of the opposing medical expert for purposes of impeachment, the following are intended as guidelines: (1) The expert may be asked what he or she has been asked to do in the pending case and the compensation paid to the expert. (2) The expert may be examined in general about his or her expertise and the nature of his or her work. (3) The expert may be asked to give an approximation of the amount of work performed as an expert for plaintiffs and for defendants and the percentage of each. (4) The expert may be asked what portion of his or her total work is performed as an expert witness, including an approximation of hours expended, percentage of income earned as an expert, and the approximate number of independent medical exams performed per year. (5) The expert shall not be required to disclose the amount of income earned as an expert, but must disclose the percentage of total income received for work performed as an expert. (6) In all cases, the privacy of the patients seen and treated by such expert shall be observed. (7) The expert shall not be required to compile or produce documents that are nonexistent other than the information that is required in these guidelines. (8) To the extent that the expert has such information reasonably available, the expert shall be required to identify each case in which the expert has testified at trial or by deposition, performed an IME, or other-

wise furnished evidence in such case and whether the expert was retained by the plaintiff or the defendant. Such information shall be furnished for the prior 3 years.

The special master found that Cotton has compiled certain patient information since July 1, 1996. As to such information so compiled, in the event that Cotton testifies, he shall first produce the name of any case in which he has testified, given a deposition, performed an IME, or otherwise furnished information or evidence in such case and shall disclose whether he furnished such information on behalf of the plaintiff or the defendant. He shall also disclose the total number of individuals in each of the above categories that he has examined on behalf of insurance carriers, defense attorneys, and plaintiffs' attorneys since July 1, 1996.

In the event that the expert elects not to furnish such information, then he or she may be excluded from testifying or being a witness in the case. The trial courts shall have discretion to vary such guidelines where appropriate and where the facts of the case so dictate. To the extent that such guidelines will have application to future witnesses, they shall serve as a basis for the trial courts' rulings for discovery.

## CONCLUSION

We order that a peremptory writ of mandamus be issued, directing the respondent to vacate the order denying the motion to quash and to enter an order sustaining the motion to quash subject to the guidelines set forth herein.

PEREMPTORY WRIT ISSUED.