STATE OF NEBRASKA EX REL. UPPER REPUBLICAN NATURAL
RESOURCES DISTRICT ET AL., RELATORS, V. THE HONORABLE
DISTRICT JUDGES OF THE DISTRICT COURT FOR
CHASE COUNTY, NEBRASKA, RESPONDENTS.

728 N.W.2d 275

Filed March 2, 2007.   No. S-06-549.

Donald G. Blankenau and Jaron J. Bromm, of Blackwell, Sanders, Peper & Martin, L.L.P., and Joel E. Burke for relators.

No appearance for respondents.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The relators, the Upper Republican Natural Resources District (Upper Republican NRD) and its board of directors, seek a

peremptory writ of mandamus compelling the district court to vacate its previous orders compelling discovery of conversations that occurred during closed sessions convened under Nebraska's Open Meetings Act[1] where legal counsel was present. At issue in this case is whether the conversations in question are protected from discovery under the Open Meetings Act, the attorney-client privilege, or the state secrets privilege.

## FACTS

The Upper Republican NRD is a natural resources district[2] and qualifies as a public body as defined in the Open Meetings Act.[3] In addition to its other duties, the Upper Republican NRD is responsible for formulating and adopting an integrated management plan in conjunction with the Nebraska Department of Natural Resources as provided by the Ground Water Management and Protection Act.[4]

On April 21, 2005, WaterClaim, a Nebraska nonprofit corporation, and several individual irrigators who reside within the boundaries of the Upper Republican NRD (collectively WaterClaim) sued the Upper Republican NRD and its then-existing board of directors (collectively the relators). WaterClaim's complaint alleged that the relators "knowingly engaged in repeated, intentional, and pervasive closed sessions at public meetings at which public policy was debated and discussed" in violation of the Open Meetings Act. WaterClaim sought declaratory and injunctive relief.

As part of pretrial discovery, WaterClaim provided notice of its intention to depose the individual relators and Jasper Fanning, the manager of the Upper Republican NRD. The relators filed a motion to limit or terminate the depositions pursuant to Neb. Ct. R. of Discovery 26 (rev. 2001) on the basis that discussions held in a closed session are not subject to discovery because they are confidential and protected by the attorney-client privilege.

---

[1] Neb. Rev. Stat. § 84-1408 et seq. (Reissue 1999 & Cum. Supp. 2006).

[2] Neb. Rev. Stat. § 2-3201 et seq. (Reissue 1997 & Cum. Supp. 2006).

[3] § 84-1409.

[4] Neb. Rev. Stat. § 46-701 et seq. (Reissue 2004 & Cum. Supp. 2006).

The depositions proceeded without a ruling on this motion. During the first deposition, counsel for WaterClaim inquired into the substance of the discussions that took place in closed sessions between the relators and legal counsel. Counsel for the relators instructed the deponents not to answer questions pertaining to discussions that occurred during closed sessions. The depositions were discontinued, and WaterClaim filed a motion to compel discovery.

The judge presiding over the case entered an order sustaining WaterClaim's motion to compel discovery and ordered the relators to appear for depositions and answer all questions posed with regard to the closed sessions. The judge explained that

> [i]f the Court were to rule in the [relators'] favor on this matter, it would prevent any lawsuit, at any time, claiming a violation of the Open Meetings [Act] to move forward because all of the evidence involved in the violation of the Open Meetings [Act] was at the meeting held in private.

In denying the relators' claim of attorney-client privilege, the judge explained that the relators failed to present sufficient evidence to prove that this privilege applied.

The relators filed a motion to amend or modify the order and asked the court to interview the deponents in camera to determine whether their anticipated testimony was protected by the Open Meetings Act or attorney-client privilege. During the course of this litigation, the original judge retired and a second, newly appointed, judge took office. The second judge denied the relators' motion and ordered the deponents to answer WaterClaim's questions.

The relators were granted leave to file an original action in this court. The relators filed a petition for peremptory writ of mandamus, asking this court to direct the district court to vacate its orders sustaining WaterClaim's motion to compel discovery.

## ASSIGNMENT OF ERROR

The relators assert that the district court erred in denying their motion for a protective order seeking to prevent disclosure of communications that occurred during closed sessions under the Open Meetings Act.

## ANALYSIS

■ Our analysis begins with the well-settled principles governing actions for mandamus. Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law.[5] In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.[6]

■ In the present case, the relators argue that they are entitled to a writ of mandamus because the district court erred in denying their motion for a protective order seeking to prevent WaterClaim from acquiring information discussed during a closed session. In our determination of whether mandamus applies to an issue of discovery, we consider whether the trial court clearly abused its discretion in not issuing a protective order which limited the nature of the discovery.[7] Rule 26 sets forth the general provisions governing discovery in Nebraska. Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."

The relators contend that the communications at issue in this case are privileged and not subject to discovery because the communications (1) are confidential and privileged under the Open Meetings Act, (2) are protected by the attorney-client privilege, and (3) are protected under the state secrets privilege.

---

[5] *Crouse v. Pioneer Irr. Dist.*, 272 Neb. 276, 719 N.W.2d 722 (2006).

[6] *State ex rel. Musil v. Woodman*, 271 Neb. 692, 716 N.W.2d 32 (2006).

[7] *State ex rel. Acme Rug Cleaner v. Likes*, 256 Neb. 34, 588 N.W.2d 783 (1999).

## Open Meetings Act—Closed Session

The relators first argue that pursuant to the Open Meetings Act, all communications during a validly convened closed session are privileged. Relating to closed sessions, the Open Meetings Act provides in part that

> [a]ny public body may hold a closed session by the affirmative vote of a majority of its voting members if a closed session is clearly necessary for the protection of the public interest or for the prevention of needless injury to the reputation of an individual and if such individual has not requested a public meeting. The subject matter and the reason necessitating the closed session shall be identified in the motion to close.[8]

As an initial matter, with regard to our interpretation of public meetings laws, we have stated that public meetings laws are broadly interpreted and liberally construed to obtain the objective of openness in favor of the public.[9] Provisions permitting closed sessions and exemption from openness of a meeting must be narrowly and strictly construed.[10]

Insofar as the relators argue that all communications during a closed session are privileged, such argument is in error. We find no language in the Open Meetings Act that would support the assertion that the Legislature intended to create an absolute privilege for all communications occurring while a public body is in a closed session. Unlike other Nebraska statutes where the Legislature expressly created discovery privileges, the Open Meetings Act is notably silent in this regard.

For example, Neb. Rev. Stat. § 71-7903 (Reissue 2003), relating to peer review committees, provides that "[t]he proceedings, minutes, records, and reports . . . are privileged communications which may not be disclosed or obtained by legal discovery proceedings . . . ." Another example is found in Neb. Rev. Stat. § 25-2933(a) (Cum. Supp. 2006), which states that "a mediation communication is privileged . . . and is not subject to discovery

---

[8] § 84-1410(1).

[9] *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984).

[10] *Id.*

or admissible in evidence." As is evident from these, and other similar statutes,[11] when the Legislature intends to create a discovery privilege, it does so with clear and unambiguous language. In view of the fact that the Open Meetings Act contains no language relating to a closed session discovery privilege, we conclude that no such privilege exists in Nebraska.

Our conclusion is also based on the fact that if these communications were privileged solely because they occurred during a closed session, a private litigant would be left without the ability to challenge the validity of the public body's actions during a closed session. To determine whether a public body, in a closed session, has acted outside of its authority, a private litigant must have access to those communications by means of a legitimate discovery request. To conclude otherwise would, in essence, immunize a public body from any challenge relating to the propriety of its closed session.

We recognize that under certain circumstances, allowing a public body to enter into a closed session, away from the public view, serves to protect the public's interest. However, we do not conclude that granting a litigant access to communications of a closed session, by way of a limited, legitimate discovery request, will harm the public interest. In dealing with a discovery request relating to information from a closed session, a trial court may increase its supervision of the discovery process to ensure that sensitive or confidential information is protected through the creation of an appropriately tailored protective order.

Furthermore, our determination that there is no absolute discovery privilege for communications that occur during closed sessions does not necessarily mean that all communications during closed sessions are discoverable. All other recognized evidentiary privileges are still applicable. Thus, although there is no absolute privilege for closed session communications, to the extent the communications implicate other evidentiary privileges, such as the attorney-client privilege, the communications are protected.

---

[11] See, Neb. Rev. Stat. § 44-154 (Reissue 2004); Neb. Rev. Stat. § 44-425 (Reissue 2004); Neb. Rev. Stat. § 44-1107 (Reissue 2004); Neb. Rev. Stat. § 71-1,202 (Reissue 2003); Neb. Rev. Stat. § 71-2048 (Reissue 2003).

We further note that our conclusion is in accord with the reasoning of cases from other jurisdictions that have addressed this issue. For example, in *Springfield Local Sch. v. Assn. of Pub. Sch.*,[12] the Ohio Court of Appeals explained that under Ohio's version of the Open Meetings Act, "there is no absolute privilege to be accorded discussions held in executive session" but "a trial court, in its discretion, may limit discovery." The court further stated:

> Although these provisions [of the act] suggest a strong policy against public disclosure . . . the provisions protect only against access to the general public. They do not necessarily protect against disclosure in the course of litigation upon a proper discovery request, if the information is otherwise discoverable.[13]

Thus, we conclude that there is no absolute privilege for communications made during a closed session. However, to the extent those communications implicate other recognized privileges, the communications are protected.

### ATTORNEY-CLIENT PRIVILEGE

We must next determine whether the district court correctly refused to grant a protection order protecting the relators' communications that qualify under the attorney-client privilege. Nebraska's attorney-client privilege, Neb. Evid. R. 503(2),[14] provides in relevant part: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer or his lawyer's representative . . . ."

In support of their contention that the communications are protected by the attorney-client privilege, the relators submitted the affidavit of Fanning, the manager of the Upper Republican NRD. In his affidavit, Fanning testified:

---

[12] *Springfield Local Sch. v. Assn. of Pub. Sch.*, 106 Ohio App. 3d 855, 868, 667 N.E.2d 458, 467 (1995).

[13] *Id.* at 869, 667 N.E.2d at 467. See, also, *Tausz v. Clarion-Goldfield Community Sch.*, 569 N.W.2d 125 (Iowa 1997); *Gipson v. Bean*, 156 Ariz. 478, 753 P.2d 168 (Ariz. App. 1987).

[14] Neb. Rev. Stat. § 27-503(2) (Reissue 1995).

During all closed sessions as referenced to by [Water Claim] in the past twelve months, one, if not both attorneys for the District were present and were advised and instructed on negotiation strategies. Further, the attorneys for the District advised the Board as to the possible implications of failing to meet the District's requirement as required by law including possible action in Court or in the interrelated water review board.

We find that this affidavit, although vague on the substance and context of the communications in the closed sessions, was sufficient to demonstrate that some of the communications at issue may be subject to the attorney-client privilege. Thus, the district court's determination that none of the communications qualified for the attorney-client privilege and its failure to perform a more thorough inquiry into the matter were in error.

In view of the facts surrounding the relators' request for a protection order, specifically, the testimony provided in Fanning's affidavit, we conclude that the district court had a ministerial duty to conduct a more extensive investigation into the relators' claim that the communications were protected by the attorney-client privilege. While the district court may not have been required to follow the procedures suggested by the relators, the court was obligated to facilitate some meaningful in camera review of the contested evidence in order to fully consider the relators' claim to the attorney-client privilege.

Accordingly, we conclude that a peremptory writ of mandamus should issue, directing the district court to vacate its orders compelling discovery and to allow the relators an opportunity to submit additional evidence for the purpose of clarifying which, if any, of the alleged communications qualify for protection under the attorney-client privilege.

### STATE SECRETS PRIVILEGE

In their remaining argument, the relators assert that their communications are protected from discovery pursuant to Neb. Evid. R. 509(1).[15] This section provides in relevant part:

The government has a privilege to refuse to give evidence and to prevent any public officer from giving evidence as to

---

[15] Neb. Rev. Stat. § 27-509(1) (Reissue 1995).

communications made by or to such public officer in official confidence when the public interest would suffer by the disclosure.[16]

We note that there is nothing in the record before us to suggest that this argument was raised to the district court. Accordingly, we will not address this argument as it was first presented in this mandamus action and a district court could not have had a ministerial duty to perform an act that it was not asked to perform.[17]

## CONCLUSION

We determine, given the language of the Open Meetings Act, that there is no absolute privilege for communications made during a closed session. However, to the extent the communications implicate other recognized privileges, the communications are protected. We therefore conclude that a peremptory writ of mandamus shall issue, directing the district court to vacate its orders compelling discovery and to conduct an in camera review in order to evaluate whether the contested evidence is protected by the attorney-client privilege.

PEREMPTORY WRIT ISSUED.

---

[16] *Id.*

[17] See *State ex rel. AMISUB v. Buckley*, 260 Neb. 596, 618 N.W.2d 684 (2000).