770 N.W.2d 632 (2009)
278 Neb. 389
W.K. STETSON, M.D., et al., relators,
v.
Honorable Brian C. SILVERMAN, Judge, District Court for Dawes County, Nebraska, respondent, and
Sharon K. Rankin, intervenor.
No. S-09-209.
Supreme Court of Nebraska.
August 21, 2009.
*635 Mark E. Novotny, of Lamson, Dugan & Murray, L.L.P., and Lonnie R. Braun, of *636 Thomas, Braun, Bernard & Burke, L.L.P., Omaha, for relators.
Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for Scottsbluff, intervenor Sharon K. Rankin.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
This is an original action. The relators have asked us to issue a peremptory writ of mandamus, ordering the Honorable Brian C. Silverman, judge of the district court for Dawes County, to vacate his discovery order in the underlying medical malpractice action. In that action, Sharon Rankin, the plaintiff, had filed notice of her intent to issue a subpoena to the Department of Health and Human Services (Department) for document protection. In the subpoena, she sought the investigatory materials in the disciplinary action against W.K. Stetson, M.D., one of the defendant physicians. The defendants objected that the requested materials were privileged under Neb.Rev.Stat. § 38-1,106 (Reissue 2008). In his order, Judge Silverman overruled the defendants' objection. His order also permitted Rankin to conduct other discovery regarding the misconduct. This case centers on whether Rankin can discover the underlying facts supporting the disciplinary action against Stetson.

BACKGROUND
This action has its origin in Rankin v. Stetson,[1] a case we previously decided. Rankin sued Stetson; C.A. Sutera, M.D.; and the Chadron Medical Clinic, P.C. She alleged that the defendants failed to properly diagnose and treat her spinal cord injury after she fell. Stetson was the emergency room physician. On appeal, we affirmed the district court's order that excluded Rankin's expert's testimony, but we reversed the district court's order granting the defendants summary judgment. We concluded that another expert's affidavit submitted by Rankin contained statements that sufficiently created a factual issue on causation.
While our decision was pending, Stetson surrendered his medical license. The State had brought a disciplinary action against Stetson. It alleged that from 2000 to 2008, during non-gynecological examinations, he engaged in inappropriate sexual touching of patients. In May 2008, Stetson waived his right to a hearing, pleaded no contest to the allegations, and voluntarily surrendered his license for a minimum of 2 years.
In January 2009, Rankin moved to file an amended complaint. In the complaint, she had added a claim alleging that she did not give informed consent to Stetson's medical care, because he had not disclosed his "compulsions" and unfitness. Rankin concedes that Stetson did not engage in misconduct with her. But she claimed that the material was relevant because his "compulsions" likely distracted him from concentrating on her injury. She also filed notice of her intent to serve the Department's records custodian with a rule 34(A) subpoena for production of documents.[2] She wanted to obtain the complaints and complete investigatory record in the State's case against Stetson. Stetson objected to the subpoena. Rankin then moved to compel Stetson to supplement his original responses to interrogatories *637 and to overrule the defendants' objection to the subpoena. Stetson's original responses had stated that he was board certified and listed the professional boards and associations to which he belonged. Stetson argued that Rankin could not discover the material, because it was irrelevant and statutorily privileged under § 38-1,106.
In a February 13, 2009, journal entry, Judge Silverman overruled the defendants' objections to the subpoena. He also continued the trial so that Rankin could conduct further discovery regarding the allegations and surrender of Stetson's license. The permitted discovery included a second deposition of Stetson.
The defendants then applied for leave with this court to file an original action for mandamus. We granted an alternative writ of mandamus directing Judge Silverman to vacate and set aside his order of February 13, 2009, or to show cause why we should not issue a peremptory writ of mandamus. We also granted Rankin's motion to intervene.

ANALYSIS
Mandamus is a law action. We have defined it as an extraordinary remedy, not a writ of right. A writ of mandamus is issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person. A court issues a writ only when (1) the relator has a clear right to the relief sought, (2) a corresponding clear duty exists for the respondent to perform the act, and (3) no other plain and adequate remedy is available in the ordinary course of law.[3] And in a mandamus action, the relator has the burden of proof and must show clearly and conclusively that such party is entitled to the particular remedy sought and that the respondent is legally obligated to act.[4]
In determining whether mandamus applies to a discovery issue, we consider whether the trial court clearly abused its discretion in not limiting the scope of the discovery.[5] Here, we consider only three issues: (1) whether Judge Silverman could permit Rankin to conduct additional discovery from original sources of information used by the Department; (2) whether Stetson could invoke § 38-1,106 to prevent discovery of the Department's complaints and investigatory records; and (3) whether the discovery of Stetson's unprofessional conduct was relevant for discovery purposes.
Under rule 26(b)(1) of Nebraska's discovery rules, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...."[6] Resolving this mandamus request centers on the evidentiary privilege under § 38-1,106(1). Before deciding the substantive issues, however, we explain why we are referring to the current version of the statutory privilege, which was not in effect when the Department investigated the complaints against Stetson or when he surrendered his license in May 2008.

RECODIFICATION OF STATUTES DOES NOT AFFECT ANALYSIS
At the time Stetson surrendered his license, the Legislature codified the statutory *638 privilege at Neb.Rev.Stat. § 71-168.01(7) (Reissue 2003). But in February 2009, when the court entered its discovery order, the current recodification of statutes governing disciplinary actions against "credentials"[7] was in effect.[8] Under the current statutes, "credential" includes a license, certificate, or registration.[9] The new statutes refer to conduct by a "credential holder" instead of a licensee or certificate holder.[10]
In some circumstances, the recodification of a statutory privilege might require us to determine whether the controlling statute was the one in effect when the trial court resolved the discovery dispute or the one in effect when the protected action occurred.[11] But here, both versions of the statutes are essentially the same regarding the public or privileged status of the filings and investigatory records. So we need not decide which statute governed the issue. Because no relevant difference exists between the statutes, we shall refer to the current codification. Next, we explain the extent of the evidentiary privilege in disciplinary proceedings.

PUBLIC RECORDS AND PRIVILEGES UNDER DISCIPLINARY PROCEEDINGS STATUTES
Sections 38-186 to 38-1,113 set out the permitted procedures for resolving allegations in a complaint to the Department or a petition for discipline against a credential holder. The Attorney General receives a copy of all the Department's complaints. Afterward, the Attorney General's office can choose between three options: (1) It can file a petition for discipline; (2) it can negotiate a voluntary settlement; or (3) it can refer insubstantial violations to the Department for a professional board's recommendation that the Attorney General enter into a nondisciplinary "assurance of compliance" agreement with the credential holder.[12] But even if the Attorney General does not elect to file a petition, the Department can independently request that the Attorney General commence such a proceeding after board review.[13]
If the Attorney General files a petition for discipline with the Department, the allegations in the petition are not privileged.[14] Additionally, any settlement that the Department accepts after the Attorney General has filed a petition for discipline is public.[15] Finally, the Department's underlying complaints and investigatory records are public if there is a contested hearing before the Department and the materials are made part of the record.[16] But, if the materials are not included in a contested hearing, the Department's incident reports, *639 underlying complaints, and investigatory records are statutorily privileged from discovery. Section 38-1,106(1), in relevant part, provides:
Reports under sections 38-1,129 to 38-1,136, complaints, and investigational records of the department shall not be public records, shall not be subject to subpoena or discovery, and shall be inadmissible in evidence in any legal proceeding of any kind or character except a contested case before the department. Such reports, complaints, or records shall be a public record if made part of the record of a contested case before the department.[17]

SECTION 38-1,106 DOES NOT PRECLUDE RANKIN'S REQUEST FOR A SECOND DEPOSITION OF STETSON AND ADDITIONAL DISCOVERY
Stetson, Sutera, and Chadron Medical Clinic (hereinafter collectively relators) claim that Judge Silverman erred in ruling that Rankin could conduct discovery, including a second deposition, regarding Stetson's surrendering of his license for sexual misconduct. But the relators make a faint argument. In their brief, they contend that § 38-1,106 "prevents the compelling of supplementary responses to written discovery or deposition questions to the extent they involve the privilege matters of the [Department]."[18]
We narrowly construe statutorily created evidentiary privileges.[19] Such privileges are in derogation of common law and the truth-seeking function of trials in settling controversies.[20] Section 38-1,106 privileges the Department's complaints, incident reports, and investigatory records. But it does not provide a clear privilege against a party's discovering any information about a disciplinary action from an original source (Stetson). Nor do the disciplinary statutes show that the Legislature intended the privilege to protect the credential holder (Stetson) from disclosure of the information after the Attorney General has filed a petition for discipline.
The Legislature has not specified whom the privilege protects. The statutes, however, show the Legislature intended to balance the public's need to know about disciplinary actions against health care professionals with the State's need to encourage the reporting of unprofessional conduct. Specifically, the Legislature has immunized from liability persons making a complaint and requesting an investigation and made such complaints confidential.[21] And professional boards must conduct closed meetings on any matter pertaining to an investigation or recommendation to the Department.[22] It has also immunized insurance employees and peer review members from liability regarding incident reports to the Department and made these reports confidential.[23] In contrast to the *640 confidentiality afforded to insurance and peer review reports, after the Attorney General files a petition for discipline, confidentiality is not absolute. The statutes make public the allegations in the petition[24] and any agreed settlement between the parties that the Department accepts.[25]
These sections illustrate that the Legislature has provided immunity from liability and discovery privileges to encourage reporting to the Department incidents of unprofessional conduct. But the statutes do not show the Legislature intended to protect the credential holder (Stetson) from discovery of the underlying facts supporting the disciplinary proceedings after the Attorney General has filed a petition for discipline. Nor would this interpretation be consistent with the way this court and other courts have interpreted the related peer review privilege for hospitals. When applying the peer review privilege, other courts have held that it does not extend to information that a person has obtained or collected independent of the peer review process.[26] We have similarly refused to extend the peer review privilege to protect materials that originated outside of the peer review process.
We have held that the peer review privilege does not apply to incident reports regarding the care of individual patients that were not prepared at the request of the hospital's peer review committee.[27] In State ex rel. AMISUB v. Buckley,[28] we stated that the peer review privilege serves a twofold purpose related to improving a hospital's care and treatment of patients: (1) It encourages communications to a hospital review committee, and (2) it encourages the committee's frank discussion and candid evaluation of clinical practices. We have further stated, "`Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.'"[29] But we concluded that the Legislature did not intend the peer review privilege to shield hospitals from all potential liability or to preclude discovery of all hospital records. We reasoned, in part, that interpreting the privilege so broadly that hospitals were never held accountable for wrongdoing does not serve the goal of improving the care of patients.[30]
We find this reasoning persuasive in interpreting § 38-1,106. The privilege under § 38-1,106 is justified because it serves the public goal of improving the care and treatment of patients. It serves this goal in much the same way that the peer review privilege does: by encouraging communications to the Department about unprofessional conduct. But like *641 the peer review privilege, § 38-1,106 does not preclude discovery of information from persons who obtained the information from outside of the privileged investigatory process. Thus, in State ex rel. AMISUB,[31] the plaintiff could discover incident reports that were written or collected by hospital nurses because they were neither originated by nor requested by a hospital review committee. Similarly, plaintiffs in a malpractice action could discover information about the incident from a hospital physician because the physician had obtained the information from a nurse before any peer review process had been initiated.[32]
Moreover, interpreting the statutes as providing a privilege to the credential holder would not make sense. It would effectively mean that a plaintiff in a malpractice action could never show why a health care professional had lost his or her license even if the State had disciplined the professional for the very conduct alleged in the complaint. This creates an absurd result because the plaintiff filing the suit has waived any confidentiality in the original complaint. And so, we conclude that the evidentiary privilege under § 38-1,106 belongs to the Department, not to Stetson. And § 38-1,106 limits the privilege to protecting the Department's incident reports, complaints, and investigatory records when they are not included in a contested hearing. The relators have failed to clearly and convincingly show that § 38-1,106 protects Stetson from Rankin's further discovery of information available independent of the Department's investigation.

STETSON WAS NOT ENTITLED TO INVOKE THE PRIVILEGE AGAINST RANKIN'S RULE 34(A) SUBPOENA FOR DOCUMENT PRODUCTION
The relators argue that we should issue a writ of mandamus prohibiting the rule 34(A) subpoena because the district court had a clear legal duty under § 38-1,106 to protect any information involving the Department's investigation. The relators argue that under § 38-1,106, the materials Rankin sought are privileged.
Rankin disagrees. She argues that under § 38-1,106, she can discover the Department's reports of unprofessional conduct made by patients or coworkers. She further argues that Stetson waived any protection under the privilege by entering into an agreed settlement. We disagree with both parties' arguments.
We will first discuss Rankin's arguments. Waiver does not apply here. Generally, an evidentiary privilege is waived when the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.[33] As discussed, the privilege under § 38-1,106 was not Stetson's to waive. Further, in noncontested cases, the Legislature has explicitly privileged the Department's incident reports, complaints, and investigatory records despite making public the petition for discipline and the order accepting the agreed settlement. Thus, the public record status of the petition and the order has no effect on the Department's privilege.
We further disagree with Rankin's argument that the Department's "reports" *642 of unprofessional conduct made by patients or coworkers are generally discoverable under this statute. She argues that § 38-1,106's protection of reports under Neb. Rev.Stat. §§ 38-1,129 to 38-1,136 (Reissue 2008) refers only to insurers' reports to the Department, showing that § 38-1,106 does not privilege reports from other sources. It is true that these sections deal only with insurers' incident reports. But Rankin's interpretation of § 38-1,106 ignores this section's further protection of "complaints." To interpret the statute's protection as excluding patients' or coworkers' complaints to the Department would be inconsistent with the Legislature's use of the word "complaint" under § 38-1,138. Section 38-1,138(1) provides:
Any person may make a complaint and request investigation of an alleged violation of the Uniform Credentialing Act or rules and regulations issued under such act. A complaint submitted to the department shall be confidential, and a person making a complaint shall be immune from criminal or civil liability of any nature, whether direct or derivative, for filing a complaint or for disclosure of documents, records, or other information to the department.
(Emphasis supplied.) The Legislature has defined "confidential" information under these statutes to mean "information protected as privileged under applicable law."[34]
Because the Legislature has made public the "petition" for discipline against a credential holder,[35] the word "complaints" in § 38-1,106 clearly does not refer to a petition for discipline. Obviously, the Legislature intended "complaints" in § 38-1,106 to refer to the underlying complaints submitted to the Department under § 38-1,138. The Legislature has also privileged as confidential information patients' or coworkers' complaints from peer review committees.[36] Thus, Rankin's argument is without merit.
We also reject Judge Silverman's interpretation of the statutes. He contends that the complaints and records here were part of the record in a contested case. Neb.Rev.Stat. § 84-901(3) (Reissue 2008) of the Administrative Procedure Act defines a "contested case" as "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." We have held that a proceeding becomes a contested case when a hearing is required.[37]
After a petition for discipline has been filed under § 38-186, the director, under §§ 38-188 and 38-189, must fix a time and place for a hearing and serve notice upon the credential holder. Section 38-186(3) provides that the proceeding shall be summary in nature and triable as an equity action. It further specifies the type of evidence that a party may use in the proceeding. Finally, §§ 38-191 and 38-192 require the director to adjudicate the allegations based on the director's findings of fact. As we discussed in Langvardt v. Horton,[38] this type of proceeding clearly requires the Department to act in a quasi-judicial capacity and constitutes a contested case under § 84-901(3).
*643 But under § 38-190(1), the parties may dispose of any petition by "stipulation, agreed settlement, consent order, or similar method" at any time before the director enters an order. If the director accepts a settlement, the settlement becomes the basis of the director's order. Thus, if the parties dispose of a disciplinary petition through an agreed settlement before a hearing, as in this case, then, under § 38-190(1), the proceeding is not one required by law or constitutional right to be determined after an agency hearing. Because this was not a contested case, the privilege would apply to the Department's underlying complaints and investigatory records.
Having disposed of Rankin's arguments and Judge Silverman's application of the statutes, we turn to the heart of the inquiry: Stetson's argument that Judge Silverman had a clear legal duty to protect these documents from discovery under § 38-1,106. We view the dispositive issue, however, as whether Stetson could invoke the privilege.
The Nebraska rules of evidence set forth most of the commonly recognized evidentiary privileges.[39] For privileges related to confidential matters, as in this case, an evidentiary privilege may generally be asserted in two ways: (1) The holder of the privilege, or a person authorized to act on behalf of the holder, can assert the privilege, or (2) the other party to a confidential communication can assert the privilege if the other party is doing so on the holder's behalf. Courts apply a similar rule regarding the constitutional privilege against self-incrimination: the privilege must be claimed by the witness who is the holder of the privilege, not a party opposing admission of the evidence.[40] And courts have applied the same standing rule against other types of privileges.[41] Stetson was not a party to the confidential matters privileged by § 38-1,106; he was the subject of the investigation. As previously stated, the privilege did not run to Stetson. And, obviously, as the subject of the investigation, he was not asserting the privilege on the Department's behalf. Therefore, Stetson has failed to clearly and convincingly show that Judge Silverman had a duty to protect the information in the absence of the Department's claiming a privilege under § 38-1,106. We next consider whether the relevancy requirement under rule 26(b) precluded Rankin's discovery of further information regarding Stetson's misconduct.

RELEVANCY FOR DISCOVERY IS BROADER THAN RELEVANCY FOR TRIAL.
The relators contend that we should issue a peremptory writ of mandamus against any further discovery of the facts related to Stetson's discipline, because the information is irrelevant, highly prejudicial, and inadmissible at trial. Rankin contends that Stetson's admitted unfitness to practice medicine at the time he was treating Rankin is discoverable and relevant. She argues that she would have asked different questions at his first deposition if she had known of his sexual misconduct. She also argues that further discovery of his unprofessional conduct could lead to other admissible evidence whether his medical judgment was impaired.
*644 As stated, under rule 26(b)(1), information sought through discovery must also be "relevant to the subject matter involved in the pending action." This requirement differs significantly from the relevancy test for admission of evidence at trial: having a tendency to make the existence of any fact at issue more or less probable.[42] Moreover, under rule 26(b)(1), the inadmissibility of the information at trial is not ground for objection if the information "appears reasonably calculated to lead to the discovery of admissible evidence."
Under the same language of Nebraska's rule 26, many courts have held that relevancy at the discovery stage, when the issues are not clearly defined, is construed more broadly than relevancy at trial.[43] We agree. This reasoning is consistent with our recognition that discovery rules are broadly written to permit discovery.[44]
Stetson principally relies on a criminal case in which the Wisconsin Supreme Court affirmed the trial court's order that excluded impeachment evidence against the prosecution's expert witness.[45] The evidence would have shown that the psychiatrist was facing criminal charges related to his sexual abuse of patients when he testified that the defendant was not suffering from a mental disease when he killed two people. The defendant argued that the prosecution had opened the door on the psychiatrist's character and that the evidence was relevant to show bias and for character impeachment. The Wisconsin Supreme Court rejected both arguments. Regarding character impeachment, the court concluded that the evidence was irrelevant to the psychiatrist's reputation for truth or veracity or his abilities as an expert witness.
We note, however, that the Seventh Circuit later held in a habeas action that the evidentiary ruling violated the defendant's Confrontation Clause rights.[46] The defendant should have been permitted to impeach the psychiatrist with evidence that he was about to lose his license and faculty position at a university, and possibly go to prison. The court reasoned that the evidence was relevant to show bias for the State, but mostly to counter the prosecutor's misleading evidence that the psychiatrist was a witness of impeccable credentials and high moral standing in the community.
While we are not dealing with a Confrontation Clause issue, we find the Seventh Circuit's reasoning regarding relevancy persuasive. We have recognized that parties have a right to discover information that might impeach a witness.[47] And we have set out the purposes of the discovery process as follows:
The primary purpose of the discovery process is to explore all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute. ... The discovery process also provides an opportunity for pretrial preparation so *645 that a litigant may conduct an informed cross-examination. ... Moreover, pretrial discovery enables litigants to prepare for a trial without the element of an opponent's tactical surprise, a circumstance which might lead to a result based more on counsel's legal maneuvering than on the merits of the case.[48]
Clearly, some of the information that Rankin seeks through discovery, i.e., the reason for Stetson's surrender of his licensure, is public information. But we cannot say at the discovery stage that she could not obtain further information that would be relevant to Stetson's credibility or a misleading characterization of him at trial. Nor can we rule out her obtaining information that would be relevant to showing his medical judgment was impaired at the time he treated Rankin. But we emphasize that we are not commenting on whether this information is admissible at trial.

CONCLUSION
We conclude that the relators have failed to meet their burden of showing clearly and convincingly that they are entitled to quash discovery of information regarding Stetson's surrender of his license. In addition, they do not have standing to quash a subpoena directed at the Department to obtain its records. We therefore deny their request for a peremptory writ of mandamus ordering Judge Silverman to vacate his discovery order.
PEREMPTORY WRIT DENIED.
MCCORMACK, J., participating on briefs.
NOTES
[1] See Rankin v. Stetson, 275 Neb. 775, 749 N.W.2d 460 (2008).
[2] See Neb. Ct. R. Disc. § 6-334(A).
[3] See State ex rel. Upper Republican NRD v. District Judges, 273 Neb. 148, 728 N.W.2d 275 (2007).
[4] State ex rel. Stivrins v. Flowers, 273 Neb. 336, 729 N.W.2d 311 (2007).
[5] See id.
[6] See Neb. Ct. R. Disc. § 6-326(b)(1).
[7] See Neb.Rev.Stat. §§ 38-176 to 38-1,113 (Reissue 2008).
[8] See 2007 Neb. Laws, L.B. 463, and 2008 Neb. Laws, L.B. 308 (operative December 2008).
[9] See Neb.Rev.Stat. § 38-113 (Reissue 2008).
[10] See, e.g., § 38-181.
[11] Compare State v. Pelley, 828 N.E.2d 915 (Ind.2005), with Ley v. Blose, 698 N.E.2d 381 (Ind.App.1998); Sweasy v. King's Daughters Mem. Hosp., 771 S.W.2d 812 (Ky.1989); and Dyer v. Blackhawk Leather LLC, 313 Wis.2d 803, 758 N.W.2d 167 (Wis.App.2008).
[12] See § 38-1,107(1)(c).
[13] See § 38-1,105 and Neb.Rev.Stat. § 38-1,139 (Reissue 2008).
[14] See § 38-186(2).
[15] See § 38-190. See, also, Neb.Rev.Stat. § 71-161.03 (Reissue 2003) (former codification of § 38-190).
[16] See § 38-1,106. See, also, § 71-168.01(7) (former codification of § 38-1,106).
[17] See, also, § 71-168.01(7), Neb.Rev.Stat. § 71,168.02(2) (Reissue 2003).
[18] Brief for relators at 19.
[19] See, State ex rel. AMISUB v. Buckley, 260 Neb. 596, 618 N.W.2d 684 (2000); Branch v. Wilkinson, 198 Neb. 649, 256 N.W.2d 307 (1977).
[20] See, United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Branch, supra note 19. Compare IAFF Local 831 v. City of No. Platte, 215 Neb. 89, 337 N.W.2d 716 (1983), disapproved on other grounds, Hyannis Ed. Assn. v. Grant Cty. Sch. Dist. No. 38-0011, 269 Neb. 956, 698 N.W.2d 45 (2005).
[21] See Neb.Rev.Stat. § 38-1,138 (Reissue 2008).
[22] See § 38-1,105(5).
[23] See Neb.Rev.Stat. §§ 38-1,127, 38-1,134, and 38-1,135 (Reissue 2008).
[24] See § 38-186(2).
[25] See § 38-190(1).
[26] See, e.g., Babcock v. Bridgeport Hosp., 251 Conn. 790, 742 A.2d 322 (1999); Roach v. Springfield Clinic, 157 Ill.2d 29, 623 N.E.2d 246, 191 Ill.Dec. 1 (1993); Virmani v. Presbyterian Health Services, 350 N.C. 449, 515 S.E.2d 675 (1999); State ex rel. Brooks v. Zakaib, 214 W.Va. 253, 588 S.E.2d 418 (2003). See, also, Annot., 69 A.L.R.5th 559 (1999); 23 Am.Jr.2d Depositions and Discovery § 159 (2002); 81 Am.Jur.2d Witnesses § 537 (2004). Compare Sun Health Corp. v. Myers, 205 Ariz. 315, 70 P.3d 444 (Ariz.App. 2003).
[27] State ex rel. AMISUB, supra note 19.
[28] See id.
[29] Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 226, 214 N.W.2d 490, 492 (1974).
[30] State ex rel. AMISUB, supra note 19.
[31] See id.
[32] See Roach, supra note 26.
[33] See, Neb.Rev.Stat. §§ 27-511 and 27-512 (Reissue 2008); Leeds v. Prudential Ins. Co., 128 Neb. 395, 258 N.W. 672 (1935). See, also, In re Grand Jury Proceedings, Vargas, 723 F.2d 1461 (10th Cir. 1983); Harold Sampson v. Linda Gale Sampson, 271 Wis.2d 610, 679 N.W.2d 794 (2004).
[34] § 38-177(1).
[35] See § 38-186.
[36] See § 38-1.127.
[37] Kaplan v. McClurg, 271 Neb. 101, 710 N.W.2d 96 (2006), citing Stoneman v. United Neb. Bank, 254 Neb. 477, 577 N.W.2d 271 (1998).
[38] Langvardt v. Horton, 254 Neb. 878, 581 N.W.2d 60 (1998).
[39] See Neb.Rev.Stat. §§ 27-503 to 27-510 (Reissue 2008).
[40] See U.S. v. Ortega, 150 F.3d 937 (8th Cir. 1998).
[41] See 1 McCormick on Evidence § 73.1 (6th ed.2006).
[42] See Neb.Rev.Stat. § 27-401 (Reissue 2008).
[43] See 8 Charles Alan Wright et al., Federal Practice and Procedure § 2008 (2d ed. 1994 & Supp.2009).
[44] See State ex rel. Acme Rug Cleaner v. Likes, 256 Neb. 34, 588 N.W.2d 783 (1999).
[45] See State v. Lindh, 161 Wis.2d 324, 468 N.W.2d 168 (1991).
[46] See Lindh v. Murphy, 124 F.3d 899 (7th Cir.1997).
[47] See State ex rel. Acme Rug Cleaner, supra note 44. See, also, 8 Charles Alan Wright et al., supra note 43, § 2015.
[48] Paulk v. Central Lab. Assoc., 262 Neb. 838, 846, 636 N.W.2d 170, 177 (2001) (citations omitted).