STATE of Minnesota, Respondent,

v.

John Walter MOORE, Appellant.

No. A03–1237.

Supreme Court of Minnesota.

July 14, 2005.

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

On February 21, 2003, appellant John Walter Moore was found guilty of first-degree assault in violation of Minn.Stat. § 609.221, subd. 1 (2004) (great bodily harm), and third-degree assault in violation of Minn.Stat. § 609.223, subd. 1 (2004) (substantial bodily harm), in connection with an incident involving his girlfriend, Joyce Catchings. On appeal, Moore raised three issues: (1) that the district court committed reversible error by instructing the jury that the loss of a tooth constitutes the permanent loss of the function of a bodily member; (2) that it was error to remove the language "creates a high probability of death" from the definition of "great bodily harm"; and (3) it was error to admit expert opinion testimony that Catchings' injuries met the legal definition of "great bodily harm." The court of appeals affirmed Moore's conviction. *State v. Moore*, No. A03–1237, 2004 WL 2159024 (Minn.App. September 28, 2004) (unpublished). We reverse and remand.

On October 19, 2002, St. Paul Police Officer Felicia Reilly responded to a 911 call regarding a domestic dispute at 875 Geranium Street. When Reilly arrived at the scene a few minutes after receiving the call, she observed Catchings suffering from a bleeding mouth and, according to Reilly, Catchings appeared "very emotionally upset and obviously frightened."

Catchings told Reilly that she had gone out the night before with a girlfriend and when she came home, her boyfriend, appellant Moore, was very angry. Catchings said that Moore grabbed her and dragged her into the bedroom, screaming "I'm going to kill you, I'm going to shoot you." She told Reilly that Moore then threw her on the bed, choked her, and punched her three times in the mouth.[1]

---

1. At trial, Catchings' testimony differed from her statement to Reilly on the day of the incident. Catchings testified that Moore hit her on her arms and legs, but she could not recall if he hit her in the mouth. She testified that she thought it was the pressure of Moore lying on her that caused her mouth to bleed. When Moore was arrested on October 25,

Reilly took Catchings to the emergency room at Regions Hospital. Doctor Mark Gibson Rayner examined Catchings and determined that she sustained an injury to the left side of her face and that her jaw was fractured. Rayner testified at trial that Catchings' injury could have been caused by a punch with a fist. Rayner also testified that it was necessary to perform immediate surgery because the fracture had a high risk of infection if not repaired within 24 hours. A titanium plate and screws were attached to Catchings' jaw to align the fracture and allow the jaw to heal. Rayner testified that because the fracture did not heal properly, Catchings would require further surgery to remove dead bone and either insert new plates or a bone graft. In addition, because a wisdom tooth had punctured the roof of Catchings' mouth, the tooth was not viable and had to be removed.

At trial, the state asked Rayner to review the legal definition of "great bodily harm," an element of first-degree assault. Over defense objection, Rayner testified that Catchings' injury met the legal definition of "great bodily harm" because it satisfied the criterion of a "protracted loss or impairment of the function of any bodily member." He testified that her injury met the criterion because Catchings "has continued loss of her abilities to chew and to use her lower mandible and it's undetermined on when that would be resolved." Rayner also testified that if a tooth is a bodily member, Catchings suffered a loss of a bodily member and testified that, in his opinion, her injury was a "serious bodily injury." On cross-examination, he testified that wisdom teeth are used for chewing if one has normal dentition.

The district court instructed the jury, over defendant's objection, in relevant part, that:

> Great bodily harm in this case means bodily harm that causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body, or other serious bodily harm. * * * The loss of a tooth is a permanent loss of the function of a bodily member.

The jury found Moore guilty of first- and third-degree assault, but not guilty of second-degree assault. Moore was sentenced to 139 months in prison. The court of appeals affirmed Moore's conviction, holding that any error in instructing the jury was not prejudicial and that the district court did not abuse its discretion in admitting Rayner's testimony. *Moore*, 2004 WL 2159024 at *4–5. We granted review.

I.

■■■ The first issue before us is whether the trial court erred by instructing the jury that "[t]he loss of a tooth is a permanent loss of the function of a bodily member." When determining the adequacy of jury instructions, this court reviews for an abuse of discretion. *State v. Peou*, 579 N.W.2d 471, 475 (Minn.1998). The district court has considerable latitude in selecting language for jury instructions. *Id.* Jury instructions are viewed as a whole to determine whether they fairly and adequately explain the law. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). An instruction is error if it materially misstates the law. *See State v. Pendleton*, 567 N.W.2d 265, 269–70 (Minn.1997).

■■■ In Minnesota, the definition of "great bodily harm" includes an injury that "causes a permanent or protracted loss or

2002, he admitted to the investigator that he may have hit Catchings once or twice, but was not sure if he broke her jaw.

impairment of the function of any bodily member or organ." Minn.Stat. § 609.02, subd. 8 (2004). The question of whether a particular injury constitutes great bodily harm is a question for the jury. *State v. Bowers,* 178 Minn. 589, 592, 228 N.W. 164, 165 (1929). The district court here, over defense objection, instructed the jury that "loss of a tooth is a permanent loss of the function of a bodily member."

Moore argues that the instruction was improper because it effectively constituted a directed verdict for the prosecution on the element of great bodily harm. The court of appeals concluded that the instruction in this case correctly stated the law as set out in *State v. Bridgeforth,* 357 N.W.2d 393, 394 (Minn.App.1984), which held that there was a sufficient factual basis for a plea to first-degree assault because the loss of a tooth constitutes a permanent loss of the function of a bodily member. The court of appeals held that even if the instruction was error, it was harmless error. *Moore,* 2004 WL 2159024 at *4.

But there is a distinction between determining whether the evidence was sufficient to support a plea or conviction, as *Bridgeforth* concluded, and instructing the jury as a matter of law that an element of the offense has been established, as was done here. While the loss of a tooth in *Bridgeforth* was sufficient to support the guilty plea to first degree assault, here, instructing the jury that the loss of a tooth is the permanent loss of the function of a bodily member, in effect, instructed the jury that the definition of "great bodily harm" was established. Thus, the instruction removed from consideration by the jury the question of whether the loss of a tooth constitutes "great bodily harm," violating the requirement that criminal convictions must "rest upon a jury determination that the defendant is guilty of every element of

the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (holding it was error to instruct the jury that statements were material as a matter of law when materiality was a fact question for the jury); *see also State v. Brice,* 276 Kan. 758, 80 P.3d 1113, 1122–23 (2003) (holding it was error to instruct the jury that the term "great bodily harm" means a "through and through bullet wound"); *United States v. Mentz,* 840 F.2d 315, 319 (6th Cir.1988); *United States v. White Horse,* 807 F.2d 1426, 1430 (8th Cir.1986). Accordingly, we hold that the district court's instruction that the loss of a tooth constituted the permanent loss of the function of a bodily member was erroneous.

■ Having held that the instruction was error, we turn to the state's contention that this error was harmless beyond a reasonable doubt. The state argues that the error was harmless because there was sufficient evidence to prove great bodily harm. Moore, however, argues that the instruction constitutes reversible error. We agree with Moore.

In *Rose v. Clark,* the United States Supreme Court addressed the application of the harmless error test and stated in dicta that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury." 478 U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The Court stated that where the right to have a jury determine guilt is "altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." *Id.; see also White Horse,* 807 F.2d at 1432 (holding that an instruction that deprived the jury of the ability to determine whether the facts es-

sential to the conviction were established by the evidence was reversible error); *Mentz,* 840 F.2d at 323–24. Because a jury instruction that the loss of a tooth constitutes the permanent loss of the function of a bodily member deprives the defendant of the right to have the jury determine that every element of the charged offense has been established, harmless error analysis is not applicable. Accordingly, Moore's conviction is reversed and we remand for a new trial.

## II.

Because we conclude that the instruction at issue constitutes reversible error, no further analysis is necessary. But we choose to address the remaining two issues to provide guidance to the district court and counsel on remand.

■ Moore's second argument also relates to the instruction defining "great bodily harm." He argues that the district court erred by removing from the definition the alternative that the bodily injury "create[d] a high probability of death." Great bodily harm is defined as: "bodily injury [1] which creates a high probability of death, or [2] which causes serious permanent disfigurement, or [3] which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or [4] other serious bodily harm." Minn.Stat. § 609.02, subd. 8. Leaving out the first alternative definition-"creates a high probability of death"—the district court instructed the jury that:

> Great bodily harm in this case means bodily harm that causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body, or other serious bodily harm.

Moore argues that the inclusion of the language "creates a high probability of death" is necessary to accurately define "great bodily harm." He argues that applying the rule of ejusdem generis—that the meaning of general words is restricted by preceding particular words—the general category of "other serious bodily harm" acquires meaning in the context of the three alternative categories of injuries in the great bodily harm definition. The state asserts that the four alternative definitions of great bodily harm are "equal, alternate and independent modalities of proof in the disjunctive" and that the instruction is properly tailored to the facts of the case. In the alternative, the state argues that if the rule of ejusdem generis applies, the court's instructions gave adequate context to the term "other serious bodily injury."

There is no precedent dealing specifically with the issue presented in the jury instruction here, but cases involving related issues do provide some guidance. In *Cleveland v. United States,* the United States Supreme Court addressed the meaning of the phrase "any other immoral purpose" under a federal statute making it an offense to transport in interstate commerce any woman or girl for prostitution, debauchery, or "any other immoral purpose." 329 U.S. 14, 16, 67 S.Ct. 13, 91 L.Ed. 12 (1946). The Court concluded that under the ejusdem generis rule of construction, the general words—"any other immoral purpose"—were confined to the class of which they are a part and could not be used to enlarge it or be interpreted "more narrowly than the class." *Id.* at 18, 67 S.Ct. 13. In *Cheatham v. State,* the Wisconsin Supreme Court addressed whether Wisconsin's definition of great bodily harm was unconstitutionally vague.[2] 85 Wis.2d 112, 270

---

**2.** Minnesota's definition was modeled on the

Wisconsin code and is the same as the Wis-

N.W.2d 194 (1978). The Wisconsin Supreme Court rejected the defendant's vagueness claim, stating that:

> Presented with an instruction containing the entire statutory definition of "great bodily harm" a jury could reasonably interpret the phrase "other serious bodily injury" in that context, particularly so because of the preceding phrases which describe severe injuries. Even though the general phrase is not restricted to the meaning of the enumerated injuries, it acquires sufficient definition because of the nature of the injuries enumerated.

270 N.W.2d at 200.

■ While the issues in *Cleveland* and *Cheatham* differ from the issue in the case before us, the reasoning is useful. In both cases, the courts relied on the preceding enumerated categories in defining the general, catch-all phrase. Thus, in accord with the reasoning in *Cleveland* and *Cheatham*, we agree with Moore that the phrase "other serious bodily harm" should be taken in the context of the other three alternative definitions. We conclude that when a statute contains a "catch-all" definition, such as "other serious bodily harm," the better practice, where not impractical because of statutory complexity or other reasons, is to include the alternative definitions in order to provide adequate context for the general term, and the district court should so instruct the jury upon retrial.

### III.

■ The final issue in this appeal concerns the admission of expert testimony from Rayner that Catchings' injuries met the legal definition of "great bodily harm." The admission of an expert's opinion generally rests within the discretion of the district court. *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984).

The district court, over defense objection, admitted the following testimony:

State: Based on your experience, your training and your familiarity with Joyce[ ] Catchings' surgery, any follow-up visits or procedures, would you say that her injury meets the definition of great bodily harm?

Defense: Objection, foundation.

Court: Overruled.

Dr. Rayner: As regarding protracted loss or impairment of the function of any bodily member or organ, it does meet that criteria.

State: Why does it meet that criteria?

Dr. Rayner: She has continued loss of her abilities to chew and to use her lower mandible and it's undetermined on when that would be resolved.

State: Was there a loss of a bodily member?

Dr. Rayner: Well, if you consider a tooth a member, yes.

State: How about the final part of the definition, serious bodily injury, would you consider her injury serious bodily injury?

Dr. Rayner: Yes, I would.

Moore argues it was permissible for Rayner to testify to "the nature and extent of the injury, details about the corrective surgery and its follow-up, and the prognosis," but that it was impermissible for him to testify that the injury met the legal definition of great bodily harm.

■ Because an expert with special knowledge has the potential to unduly influence a jury, this court has stated that "[s]pecial care must be taken by the trial judge to ensure that the defendant's presumption of innocence does not get lost in the flurry of expert testimony and, more importantly, that the responsibility for

---

consin definition. *See* Minn.Stat. Ann.

§ 609.02 comm. cmt.—1963.

judging credibility and the facts remains with the jury." *State v. Grecinger*, 569 N.W.2d 189, 193 (Minn.1997). Minnesota's rules of evidence permit expert opinion testimony on ultimate issues if such testimony is helpful to the factfinder.[3] *See State v. Saldana*, 324 N.W.2d 227, 230 (Minn.1982). Expert opinion testimony is not helpful if "the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience." *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980). Under the helpfulness test, this court "has not allowed ultimate conclusion testimony which embraces legal conclusions or terms of art." *State v. DeWald*, 463 N.W.2d 741, 744 (Minn.1990); *see also Saldana*, 324 N.W.2d at 231 & n. 5 (stating that while an expert may "testify to observations of physical and emotional conditions," the doctor's testimony that victim had been "raped" was "a legal conclusion which was of no use to the jury"); Minn. R. Evid. 704, comm. cmt.—1977 (stating that opinions involving a legal analysis or mixed questions of law and fact are not deemed to be of any use to the trier of fact). In addition, this court has stated that "[w]hile the evidentiary rules do not bar all expert testimony concerning the ultimate issue, a district court may exclude ultimate issue testimony * * * when the testimony would merely tell the jury what result to reach." *State v. Lopez–Rios*, 669 N.W.2d 603, 613 (Minn. 2003).

Here, the court of appeals concluded that the district court did not abuse its discretion in admitting the testimony because "[b]y providing a medical explanation of the victim's injury in the context of the legal definition, Rayner's testimony was helpful to the jury." *Moore*, 2004 WL 2159024 at *5. But Rayner's testimony did not just provide a medical explanation *in the context* of the legal definition; Rayner testified that the injury *met* the legal definition. While we recognize that generally, and subject to the requirements of rule 704, ultimate opinion testimony is admissible, the manner in which the testimony was elicited in this case was not helpful to the jury because it "merely [told] the jury what result to reach." *Lopez–Rios*, 669 N.W.2d at 613. Whether Catchings' injuries constituted "great bodily harm" was a question within the knowledge and experience of the jury. Rayner's legal conclusions did not "add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience." *See Helterbridle*, 301 N.W.2d at 547. Because we have clearly determined that the instruction regarding the loss of a tooth was reversible error, we need not determine here whether the admission of the expert testimony was harmless. On remand, Rayner may testify to the nature and extent of the injury, treatment rendered, and the future prognosis, but testimony that her injuries met the legal standard of serious bodily injury is not admissible.

Reversed and remanded.

---

**3.** Under Minn. R. Evid. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."