WRIGHT, Justice
(dissenting).
The majority concludes, and I agree, that a past pattern of domestic abuse may be proven, as is the case here, by incidents of domestic abuse against more than one victim. I also agree that the district court utilized the term “any” in an ambiguous manner when it precluded defense counsel from arguing that the State was required to prove “any” alleged incident of prior domestic abuse beyond a reasonable doubt. I disagree, however, that this ambiguous use of the term “any,” when combined with any error in the definition of domestic abuse provided to the jury by the district court, was a plain error that affected Bus-tos’s substantial rights. Because Bustos is both entitled to and in fact received a fair trial, not a perfect one, I respectfully dissent.[1]
I.
The district court advised defense counsel, “[Y]ou may point out to the jury, as the JIG indicates, there must be more than one prior incident to constitute a pattern.” The district court never suggested, however, that defense counsel could not argue that the State failed to prove a pattern of domestic abuse beyond a reasonable doubt. The district court concluded that State v. Clark, 739 N.W.2d 412 (Minn.2007), “indicates that the State *668 must prove a past pattern of domestic abuse beyond a reasonable doubt, but not each individual incident that might comprise that pattern.” The district court’s direction and reasoning are consistent with our ruling in State v. Johnson, in which we concluded, “[I]n a case where there are multiple underlying acts in excess of what is necessary to prove a pattern, not all of the underlying acts need to be proven beyond a reasonable doubt.” 773 N.W.2d 81, 87 (Minn.2009). Based on its reading of Clark, the district court precluded defense counsel from arguing to the jury that “the State is required to prove any alleged incident of prior domestic abuse occurring before February 21, 2012, beyond a reasonable doubt; that’s not required.” (Emphasis added.) The majority concludes that, by precluding defense counsel’ from arguing that the State was required to prove “any” alleged incident of prior domestic abuse beyond a reasonable doubt, the district court plainly prohibited defense counsel from arguing that the State failed to prove “every” alleged incident of prior domestic abuse beyond a reasonable doubt. I disagree.
The district court’s use of the term “any” was ambiguous. One interpretation of the district court’s instruction is that, consistent with Clark and Johnson, defense counsel could not argue that an acquittal was required if the State failed to prove beyond a reasonable doubt “any” one of the six alleged prior incidents of domestic abuse. Another interpretation of the instruction is that defense counsel could not argue that the State failed to prove “every” alleged incident of prior domestic abuse beyond a reasonable doubt. Because of this ambiguity, the alleged error did not clearly contravene Johnson and Clark and was not plain. See State v. Ramey, 721 N.W.2d 294, 302 (Minn.2006). But, even if one assumes that the district court committed an error that was plain, the error does not require a new trial because any such error did not affect Bus-tos’s substantial rights.
The district court’s restriction on closing argument did not prevent defense counsel from arguing that the State was required to prove a pattern of domestic abuse beyond a reasonable doubt. Nor did the district court’s ruling prevent defense counsel from arguing that more than one prior act of domestic abuse was required to prove a past pattern. In fact, defense counsel did argue that the State failed to prove a past pattern of domestic abuse beyond a reasonable doubt. More specifically, defense counsel argued:
This domestic abuse statute requires that the State prove beyond a reasonable doubt a past pattern of domestic abuse. And we submit that’s not the case. They did not prove to you domestic abuse. They proved to you arguments in a family. I think that’s consistent with the evidence.
Defense counsel then addressed each incident. Rather than argue that these incidents did not occur, defense counsel maintained that they were “not domestic abuse.”
For example, regarding the 2010 incident with Bustos’s estranged wife, defense counsel argued:
There was no use of a knife in a threatening manner to his family. If he had a knife as he was cooking or whatever, or if he had box cutters or whatever, those were not used in a threatening manner. The statute requires a pattern of domestic abuse. It does not require a pattern of family arguments.
Addressing the emergency call, defense counsel argued: “[I]t’s got to be that she’s in fear of immediate bodily harm, not this — not that T just want this guy out of here. He’s bugging me. He’s harassing *669 me;’ that is not domestic abuse.” The district court’s restriction on closing argument did not prevent defense counsel from vigorously arguing that the State failed to prove “every” alleged incident of prior domestic abuse beyond a reasonable doubt because none of the incidents was domestic, abuse. Defense counsel deployed its arguments without impediment.
The prosecutor did not contest that the State was required to prove a pattern of domestic abuse beyond a reasonable doubt. Nor did the prosecutor dispute that more than one prior act of domestic abuse was required to prove a past pattern. In fact, the prosecutor correctly explained to the jury in his closing argument, “There must be at least two prior instances.... You don’t need to agree on which ones they are. All that each of you needs to agree is that the past pattern of domestic abuse has been proven beyond a reasonable doubt.”
The majority addresses the reasonable-doubt standard at length. The majority and I agree that the proof-beyond-a-reasonable-doubt standard is the bedrock of American criminal proceedings. However, I part ways with the majority based on the record. The majority’s claim that the district court “disarmed defense counsel” of this indispensable legal standard lacks support in the record. The only standard of proof that the district court and the attorneys addressed with the jurors was the proof-beyond-a-reasonable-doubt standard. During closing argument, defense counsel deployed the reasonable-doubt defense no less than nine times, repeatedly reminding the jury that the State had the burden of proving Bustos “guilty beyond a reasonable doubt.” Additionally, when instructing the jury on the elements of first-degree domestic abuse murder, the district court addressed each element. The element of a past pattern of domestic abuse was not omitted. The district court then instructed, “If you find that each of these five elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.” (Emphasis added.) There is no reasonable likelihood that the jurors applied a lesser standard of proof when considering the question of whether Bustos committed more than one prior act of domestic abuse.
Moreover, the State presented overwhelming evidence on more than one of the prior acts of domestic abuse. First, the February 19, 2012 incident was captured on the emergency call recording. Bustos could not argue that the incident did not occur. Because of the overwhelming evidence of its occurrence, he argued the only defense available — that the act was not domestic abuse. Second, Bustos admitted that he was upset with his daughter, M.E., in 2006 when he learned that she was pregnant. He also admitted that, after learning of M.E.’s pregnancy, he hit a box cutter against the window of the car in which the two sat. Although Bustos claimed that he was merely trying to throw the box cutter out the window, he did not deny hitting the window with the box cutter. Therefore, Bustos’s only defense was that these acts were not domestic abuse. Because his admission defeated any argument that the State did not prove his actions beyond a reasonable doubt, this defense was unaffected by the district court’s error. Consequently, there is no reasonable likelihood that the jury would have reached a different verdict had defense counsel’s argument informed the jurors that the proof-beyond-a-reasonable-doubt standard applied to the finding of two or more prior acts of abuse. This is particularly so because the State presented overwhelming evidence that Bustos had committed a pattern of domestic abuse.
*670 The majority’s rule renders any district crart error involving the proof-beyond-a-reasonable-doubt standard, however inconsequential, per se reversible. This rule is contrary to our precedent. We have previously concluded that some errors regarding the proof-beyond-a-reasonable-doubt standard were not reversible error. For example, when the district court erroneously instructed the jury that the burden was on the defendant to prove duress, in violation of the defendant’s Fourteenth Amendment due-process rights, we determined that the., erroneous instruction did not affect the defendant’s substantial rights. State v. Charlton, 338 N.W.2d 26, 31 (Minn.1983). We reasoned that the defendant was not materially and substantially prejudiced because the district court fully instructed the jury on the presumption of innocence and on the State’s ultimate burden of proof. Id. Furthermore, we reviewed the evidence and concluded, as the record supports here, that the State met its burden of proof beyond a reasonable doubt notwithstanding the jury-instruction error. Id.
Similarly, we concluded in State v. Caine that, when the jury instructions erroneously failed to advise the jury that the State had the burden to prove beyond a reasonable doubt that the defendant did not act under duress, the error did not affect the defendant’s substantial rights. 746 N.W.2d 339, 355-56 (Minn.2008). In reaching our conclusion, we considered the jury instructions as a whole and concluded that they were not “misleading or confusing on fundamental points of law.” Id. We also concluded that the State’s burden to prove each element was made clear throughout the rest of the jury instructions. Id.
Our analysis in Charlton and Caine applies with equal force here. The district court instructed the jury that each element of the offense must be proven beyond a reasonable doubt. Based on the strength of the evidence presented, no reasonable jury could have found that at least two of the incidents of prior domestic abuse committed by Bustos were not proven beyond a reasonable doubt.
In sum, the district court’s restriction on defense counsel’s closing argument did not plainly contravene the law because the restriction was subject to more than one reasonable interpretation. Moreover, even if we assume that an improper restriction was imposed, Bustos is not entitled to a new trial because the alleged error did not affect his substantial rights for four reasons. First, the restriction did not prevent Bustos’s counsel from vigorously arguing his theory of defense — namely that, because none of the prior acts constituted domestic abuse, the State had failed to prove a past pattern of domestic abuse beyond a reasonable doubt. Second, the prosecutor never contested that the State was required to prove a past pattern of domestic abuse beyond a reasonable doubt or that more than one prior act of domestic abuse was required to prove a past pattern. Third, the only standard of proof that the district court, defense counsel, and the prosecutor addressed with the jurors was the proof-beyond-a-reasonable-doubt standard. And fourth, the State presented overwhelming evidence on more than one of the prior acts of domestic abuse, thereby clearly meeting its burden of proof.
II.
The majority also concludes that the district court committed a reversible error by defining domestic abuse in the jury instructions more broadly than the statutory definition of domestic abuse in Minn. Stat. § 609.185(e) (2014).[2] Because Bustos *671 failed to object to the jury instruction at trial, we apply the plain-error test. See State v. Griller, 588 N.W.2d 786, 740 (Minn.1998). Bustos must establish that an error was committed, the error was plain, and the error affected his substantial rights. Id. If each requirement is met, we then determine whether the error must be addressed to ensure the fairness and integrity of judicial proceedings. State v. Baird, 654 N.W.2d 105, 113 (Minn.2002).
I agree with the majority that the district court committed an error that was plain because the jury instruction stated that other “similar acts” are included as domestic abuse, when Minn,Stat. § 609.185(e) uses the phrase “any similar laws of ... any other state.” The jury instruction erroneously departed from the statutory definition of domestic abuse by implying that similar acts that are criminal under Minnesota law could qualify as domestic abuse. This expanded definition ignores the plain language of section 609.185(e), which enumerates the Minnesota laws that constitute domestic abuse.
. I disagree, however, with the majority's conclusion that the district court’s jury instruction reasonably can be read to include other noncriminal acts that are similar to assault, domestic assault, criminal sexual conduct, or terroristic threats.[3] Again, the jury instruction, albeit erroneous, must be read in context. Although the jury instruction incorrectly used the phrase “or similar acts,” rather than “other criminal acts,” the context in which the phrase was used — namely, as part of a list of criminal offenses — renders unreasonable any interpretation of the phrase that includes noncriminal acts. See State v. Moore, 699 N.W.2d 733, 738-39 (Minn.2005) (applying the doctrine of ejusdem generis, which states that the meaning of general words is restricted by preceding particular words, to a jury instruction).[4]
Having determined that the district court committed an error that was plain, the next step in the analysis is to deter *672 mine whether the error affected Bustos’s substantial rights. Baird, 654 N.W.2d at 113. An error affects a defendant’s substantial rights when there is a reasonable likelihood that the instruction had á significant effect on the jury verdict. Id.
This requirement of the plain-error analysis has not been met. The improper instruction would have had a significant effect on the jury verdict only if (1) the record supported a finding that Bustos committed a criminal act that did not constitute an assault or a terroristic threat, (2) the jury made such a finding, and (3) the jury found that two of the other alleged acts were not an assault or a terroristic’ threat. On this record, there is no reasonable likelihood that the jury found Bustos committed a criminal act that was not an assault or a terroristic threat.
First, the record does not support a finding that Bustos committed a criminal act that was not an assault or terroristic threat. At trial, the jury heard two different versions of the prior violent incidents. If the jurors believed the State’s version, Bustos committed criminal acts that were either assaults or terroristic threats. If the jurors believed Bustos’s version of events, the incidents were merely family arguments. Thus, despite Bustos’s assertion to the contrary, the jury could not have found that he committed a criminal act that was something other than an assault or a terroristic threat because a “mere family argument” is not a crime under any Minnesota statute.
Even if the record supported a finding that Bustos committed a criminal act under Minnesota law that was not an assault or a terroristic threat, there is no reasonable likelihood that the jury made such a finding. In his closing argument, defense counsel explained that “the law is specific in defining domestic abuse” and that “[pjrior acts of domestic abuse have to include either intent to cause fear in another of immediate bodily harm or death, or ... the intentional infliction-of bodily harm on another.” Defense counsel emphasized that “[t]he statute requires a pattern of domestic abuse. It does not require a pattern of family arguments.” In rebuttal, the prosecutor did not contest defense counsel’s discussion of the definition of domestic abuse or otherwise suggest that a pattern of family arguments was sufficient to return a guilty verdict. Instead, the prosecutor emphasized that any threatened harm must be imminent, meaning “right now, right here.” Because both parties argued the narrow definition of domestic abuse set forth in section 609.185(e), there is no reasonable likelihood that the jurors construed the “similar acts” language of the district court’s jury instruction to define domestic abuse in a manner that includes family arguments or other noncriminal conduct.
Finally, there is no reasonable likelihood that the jury failed to find that more than one of the alleged acts were assaults or terroristic threats. From the evidence presented, no reasonable jury could conclude that Bustos’s actions did not constitute' a terroristic threat or domestic assault when Bustos grabbed his estranged wife around the neck while holding a knife in a manner that caused “everyone else” to be scared.[5] Nor could a reasonable jury determine — after hearing the recorded *673 threat to Limón that he would “put [her] down” — that he did not commit a terroristic threat. Thus, Bustos has not met his heavy burden of establishing that the erroneous jury instruction affected his substantial rights. In sum, based on the facts and circumstances presented by the evidence here, the district court did not commit reversible error by defining domestic abuse in the jury instructions more broadly than domestic abuse is defined in Minn. Stat. § 609.185(e).
III.
The majority concludes that, even if one of the errors did not affect Bustos’s substantial rights, the two errors cumulatively affected Bustos’s substantial rights. I disagree. The third prong of the plain-error test is satisfied only when the error was “prejudicial and affected the outcome of the case.” Griller, 583 N.W.2d at 741. To be prejudicial, there must be a “reasonable likelihood” that the errors “had a significant effect on the verdict of the jury.” Id.
As I conclude above, there is no reasonable likelihood that the jury found Bustos committed a criminal act that was not an assault or a terroristic threat.[6] This conclusion would not be affected by whether the district incorrectly limited defense counsel’s argument about reasonable doubt. The first error addressed by the majority pertains to whether Bustos actually committed the acts in question. The second error pertains to the type of act Bustos committed. Because these two errors address separate questions, there is no reasonable likelihood that the errors were prejudicial even when their effects are considered cumulatively. Because Bustos’s substantial rights were not affected, I would affirm Bustos’s conviction of first-degree murder while committing domestic abuse.
However, even if Bustos were able to show that the errors affected his substantial rights, he still would not be entitled to a new trial. In United States v. Olano, the United States Supreme Court made clear that a plain error that affects a defendant’s substantial rights, without more, does not entitle a defendant to a new trial.[7] *674 507 U.S. 725, 737, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Rather, a new trial will be granted only when it is necessary to ensure the fairness, integrity, or public reputation of judicial proceedings. Id. at 736-37, 113 S.Ct. 1770. Although the fairness, integrity, or public reputation of judicial proceedings is sometimes served by ordering a new trial when a defendant’s substantial rights were affected by an error that was plain, that is not always the case. And that is not the case here.
In Griller, after describing the defendant’s version of events as “far-fetched,” we concluded that, “[gjranting Griller a new trial under these circumstances would be an exercise in futility and a waste of judicial resources,” which would thwart the integrity of judicial proceedings. 583 N.W.2d at 742. The United States Supreme Court has similarly concluded that granting a new trial in the face of uncon-troverted or overwhelming evidence “encourages litigants to abuse the judicial process and bestirs the public- to ridicule it.” Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citation omitted); see also United States v. Cotton, 535 U.S. 625, 634, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (stating that “[tjhe real threat then to the fairness,-integrity, and public reputation of judicial proceedings would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial” (internal quotation marks omitted)). Hére, in the face of uncontroverted and overwhelming evidence, which includes a 911 recording of one of the assaults, granting Bustos a new trial is unwarranted.

. Because I would affirm Bustos’s conviction of first-degree murder while committing domestic abuse, I would not reach Bustos's argument that the district court erred by excluding evidence material to his defense for the second-degree intentional murder charge.

. Minnesota Statutes § 609.185(e) states:
"[DJomestic abuse” means an act that:
*671 (1) constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.2242, 609.342, 609.343, 609.344, 609.345, 609.713, or any similar laws of the United States or any other state; and
(2) is committed against the victim who is a family or household member as defined in section 518B.01, subdivision 2, paragraph (b).
(Emphasis added.) This statute was renumbered in 2014; the definition was previously found in paragraph (c).

. The majority's contention that the jury instruction can be interpreted to include noncriminal acts differs from the argument raised by Bustos. In his brief, Bustos argues that the use of “similar acts” rather than "other criminal acts” "conveyed to the jury that, in addition to the statute’s delineated acts, any similar act that is criminal in Minnesota constitute[s] domestic abuse.” (Emphasis added.)

. In Moore, we applied the doctrine of ejus-dem generis to a jury instruction that contained the catch-all phrase “other serious bodily harm,” concluding that the phrase should be interpreted "in the context of the ... three alternative definitions.” 699 N.W.2d at 738-39. The majority claims that the crimes enumerated in the district court’s jury instruction support a reasonable conclusion that the phrase "similar acts” refers to "noncriminal acts that are similar to the crimes listed." The majority, however, fails to recognize that the district court provided the jurors definitions for two of the enumerated crimes — assault and domestic assault. The district court instructed the jurors that both assault and domestic assault required the person to act with an "intent to cause fear in another of immediate bodily harm or death, or intentionally inflicts or attempts to inflict bodily harm upon another." Thus, despite the majority’s assertion to the contrary, when read as a whole, as we must do, the jury instructions at issue here do not support a reasonable conclusion that the phrase "similar acts” refers to noncriminal acts. This is so because the jurors were provided a unifying thread of intentional criminal acts.

. We previously have acknowledged that evidence of the effect of the assault on the victim is frequently introduced at trial as evidence of intent, even though evidence that the victim was fearful is not essential for a conviction of assault with intent to cause fear. State v. Fleck, 810 N.W.2d 303, 308 (Minn.2012); State v. Hough, 585 N.W.2d 393, 396 (Minn.1998). When the law is correctly applied to the facts of this case, Bustos’s actions constitute domestic assault.

. We have stated that "the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial” in rare cases. State v. Davis, 820 N.W.2d 525, 538 (Minn.2012). This case does not present that circumstance. In cases in which we have concluded that the cumulative effect of trial errors requires a new trial, the controverted evidence presents a very close case on the facts. Id. at 538-39. For example, in State v. Underwood, we concluded that multiple errors taken cumulatively warranted reversal because, "[u]nder these conditions, any error, however small, may have prejudiced defendant.” 281 N.W.2d 337, 344 (Minn.1979). The Underwood court stressed "that none of the aforementioned errors standing alone or arising under different factual circumstances would necessarily be sufficient to require reversal.” Id. (emphasis added). Similarly, in State v. Post, we concluded that "the state’s evidence ... was sufficiently weak that different rulings by the trial court might well have resulted in different verdicts,” and that the cumulative effects of evidentiary errors deprived the defendant of a fair trial. 512 N.W.2d 99, 104 (Minn.1994). In contrast to the errors at issue in Underwood and Post, the cumulative effect of the errors at issue here did not deprive Bustos of the constitutional right to a fair trial.

. The majority acknowledges that "plain errors affecting Bustos's substantial rights, without more, are insufficient to warrant a new trial.” The majority’s discussion of the fourth prong of the plain-error test emphasizes the "particularly serious” nature of the errors and their potential effects on Bustos’s trial. Such a discussion does not address the issue of why a new trial is necessary to ensure fairness, integrity, or public reputation of judicial proceedings in general. Instead, it largely duplicates the majority's analysis under the third prong of the plain-error test and conflates the third and fourth prongs. By holding in essence that a new trial is required *674 because the "particularly serious” errors affected Bustos's substantial rights in his specific trial, the majority departs from the United States Supreme Court’s well-reasoned analysis in Olano, 507 U.S. at 736-37, 113 S.Ct. 1770.