*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0643**

John Mark Hentges, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 23, 2017
Affirmed
Halbrooks, Judge**

LeSueur County District Court
File No. 40-CR-09-786

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Mark D. Nyvold, Special Assistant Public Defender, Fridley, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brent Christian, LeSueur County Attorney, Michelle M. Zehnder Fischer, Special Assistant County Attorney, St. Peter, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's order denying postconviction relief from his conviction of felony failure to pay child support, arguing that (1) he did not waive his

right to counsel, (2) his right to a fair trial was violated by a witness testifying to prejudicial information, (3) the jury instructions amounted to a directed verdict, (4) the evidence was insufficient to convict him, and (5) various acts of fraud were committed against him throughout his case. We affirm.

## FACTS

Appellant John Mark Hentges lived in Colorado with his wife, C.W., and their five children. Hentges's marriage to C.W. was dissolved in March 2006. A Colorado court awarded sole physical custody of the children to C.W. Hentges was awarded parenting time and required to pay $1,717.92 per month in child support. When Hentges later moved to Minnesota, the Colorado child-support order was registered in Minnesota for enforcement purposes. Hentges was in arrears in paying his child-support obligation at that time. Hentges appealed the registration but, due to procedural defects, this court dismissed his appeal.

Because Hentges continued to ignore his obligation to pay child support, the LeSueur County Attorney's Office initiated an action in district court to hold Hentges in contempt. After Hentges evaded service of the order to show cause, the county child-support enforcement supervisor sought criminal action against Hentges. A trial date of November 22, 2010 was set. The county attorney's office subsequently filed a felony complaint warrant charging Hentges with nonsupport of a child under Minn. Stat. § 609.375, subd. 2a (2008). After Hentges was arrested, the district court appointed counsel to represent him. Counsel argued on Hentges behalf that the Colorado order was invalid. At Hentges's first appearance, the LeSueur County attorney informed the district

2

court that he was removing himself due to Hentges's allegation that he had a personal interest in the matter. The Chief Deputy Nicollet County Attorney handled the prosecution thereafter. At the omnibus hearing, Hentges requested that the substitute prosecuting attorney be removed. The district court denied Hentges's request. Hentges also challenged probable cause and sought dismissal of the charges. Because Hentges failed to provide the state with notice of his motions, the omnibus hearing was continued.

When the omnibus hearing resumed, counsel stated that Hentges wanted to file motions on his own and that it might be appropriate for him to act as standby counsel to allow Hentges to do so. In response, the district court explained to Hentges that he could represent himself if he desired to, but that the district court was "not sure that it's a wise decision" to do so. In its omnibus order, the district court found sufficient probable cause to support the charges and denied Hentges's motion to dismiss. The district court also stated that any motions to dismiss based on Hentges's assertion that the Colorado order was defective were without merit and denied.

At the pretrial hearing on November 9, 2010, Hentges refused to enter the courtroom, claiming that the county attorney had committed a crime against him. After the district court denied Hentges's motion to remove the county attorney, Hentges entered the courtroom. Hentges then informed the district court that he had filed a lawsuit naming the judge as the defendant. Counsel again inquired as to whether it may be more appropriate for him to serve as Hentges's standby counsel, given Hentges's insistence on filing his own motions. The district court set a new trial date of February 28, 2011, but

advised the parties that no further continuances would be granted. Hentges fired counsel in a December 24, 2010 letter.

On the first morning of trial, the district court granted Hentges's request for court-appointed counsel, and the public defender's office reassigned the same attorney. Hentges refused to accept the attorney as his counsel or as advisory counsel, and the public defender's office refused to provide Hentges with a different public defender. Hentges represented himself at trial and testified that he did not owe any child support because he had already paid for his children's future needs, the Colorado child-support order was not valid, and he had not seen his children in almost four years and that he had not communicated with them in more than two and one-half years.

Over Hentges's objection, the district court granted the state's request for a jury instruction informing the jury that the Colorado order and the Minnesota registration order were valid and enforceable. The jury found Hentges guilty of nonsupport of a child.

Following trial, Hentges moved for judgment of acquittal, to vacate the judgment, and for a new trial. The district court denied the motions for judgment of acquittal and to vacate the judgment, but reserved ruling on the motion for a new trial until after a hearing. When Hentges failed to appear for the presentence investigation and the sentencing hearing, the district court denied his motion for a new trial and issued a warrant for his arrest.

Hentges was arrested several months later and was appointed a public defender, but the public defender's office withdrew after Hentges refused to speak with anyone from that office. Hentges was sentenced and released from jail. Approximately two months later,

Hentges violated his probation, and a warrant was issued for his arrest when he failed to appear at a probation-violation hearing. Hentges timely filed a direct appeal of his conviction. The state moved to dismiss Hentges's appeal because he was a fugitive from justice due to the outstanding warrant, but this court denied the motion in a special term order. The Minnesota Supreme Court granted the state's petition for review, adopted the fugitive-dismissal rule, applied the rule to Hentges's appeal, reversed this court's order, and remanded to this court with directions to dismiss Hentges's appeal if he did not surrender to law-enforcement officials within ten days after the opinion was filed. *State v. Hentges*, 844 N.W.2d 500, 506-08 (Minn. 2014). When Hentges failed to timely surrender, this court dismissed Hentges's direct appeal.

Hentges subsequently petitioned for postconviction relief. The postconviction court denied the petition on the grounds that it was procedurally barred pursuant to *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976), and because no legal basis existed for relief. On appeal, this court held that *Knaffla* did not apply, because Hentges's direct appeal was dismissed and not considered on the merits, and we reversed and remanded. *Hentges v. State*, No. A15-0726 (Minn. App. Nov. 30, 2015). On remand, in a detailed and thorough order, the postconviction court denied relief. This appeal follows.

## D E C I S I O N

This court reviews the denial of postconviction relief for abuse of discretion. *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015).

> We review legal issues de novo, but on factual issues our review is limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings. We will

5

not reverse an order unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings.

*Id.* (quotations and citations omitted).

## I.

Hentges contends that the district court failed to obtain a proper waiver of his right to counsel. The postconviction court found that Hentges waived his right to counsel when he fired counsel and forfeited his right to counsel through his dilatory conduct. We will not reverse a district court's finding that a defendant waived his right to counsel unless that finding is clearly erroneous. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009).

Criminal defendants have a constitutional right to counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. But "[a]n indigent defendant does not have an absolute constitutional right to the counsel of his choice." *State v. Krejci*, 458 N.W.2d 407, 413 (Minn. 1990). The right to counsel can be "relinquished in three ways: (1) waiver, (2) waiver by conduct, and (3) forfeiture." *Jones*, 772 N.W.2d at 504. Waiver of counsel is valid if it is knowing, intelligent, and voluntary. *Id.* A written waiver of counsel is required in felony cases, unless the defendant refuses to sign the waiver. Minn. Stat. § 611.19 (2014); Minn. R. Crim. P. 5.04, subd. 1(4). Additionally, before a defendant can waive his right to counsel, a district court must fully advise the defendant of (1) the nature of the charges, (2) the possible punishment, (3) that there may be defenses or mitigating circumstances, and (4) all other facts necessary to understand the consequences, including

6

disadvantages of waiving counsel. Minn. R. Crim. P. 5.04, subd. 1(4); *see Jones*, 772 N.W.2d at 504.

Hentges argues that he did not waive counsel because the district court did not obtain a knowing, voluntary, and intelligent waiver of his right to counsel in writing or on the record. The state appears to agree that the district court did not obtain a written or on-the-record waiver. Because the record does not reflect a written or on-the-record waiver of counsel, we consider if Hentges waived counsel by conduct or forfeited counsel.

"Waiver by conduct applies to those defendants who 'voluntarily engag[e] in misconduct knowing what they stand to lose [but] are not affirmatively requesting to proceed pro se.'" *Jones*, 772 N.W.2d at 505 (alterations in original) (quotation omitted). But waiver-by-conduct also requires the same colloquy required by Minn. R. Crim. P. 5.04, subd. 1(4). *See id.* The state argues that a "close examination of the record establishes" that Hentges waived counsel by conduct when he fired his counsel. We agree.

The district court, at different hearings, explained to Hentges the charges against him, permissible defenses, and the burden of proof. The district court also warned Hentges that he had the right to proceed pro se, but that it was not a good idea. But even if the district court's on-the-record colloquy was inadequate, Hentges was represented by counsel for several months. The district court can "reasonably presume that the benefits of legal assistance and the risks of proceeding without it had been described to defendant in detail by counsel." *State v. Worthy*, 583 N.W.2d 270, 276 (Minn. 1998) (quotation omitted). Finally, we note that Hentges was aware that he was not entitled to choose his appointed counsel, yet he discharged counsel because he was not happy with his counsel's

7

representation. *See id.* at 277 (concluding that the district court did not err in determining that defendants waived their right to counsel when they fired counsel the morning of trial based on their counsels' candid assessment of the case). The record supports the conclusion that Hentges waived counsel by his conduct.

Nonetheless, we are also persuaded that Hentges forfeited counsel. Forfeiture of the right to counsel does not require an intense inquiry from the district court, but "is usually reserved for severe misconduct, when other efforts to remedy the situation have failed." *Jones*, 772 N.W.2d at 505. This court has concluded that a defendant forfeits his right to counsel by verbally or physically abusing counsel, or where the defendant uses the right to counsel to manipulate, disrupt, or delay the proceedings. *State v. Lehman*, 749 N.W.2d 76, 81-82 (Minn. App. 2008), *review denied* (Minn. Aug. 5, 2008). The postconviction court concluded that Hentges forfeited his right to counsel, because "[Hentges] wanted to have an attorney he selected. He wanted counsel who would follow his direction as to trial tactics and procedure. He wanted to delay and stall the process indefinitely." Based on our thorough review of this record, we agree.

Hentges prolonged several hearings by arguing with the district court about its rulings, specifically with regard to the district court's ruling that the validity of the Colorado order and Minnesota registration order were not issues for trial. Hentges accused his counsel of "doing some pretty shady stuff" and called him a criminal. He also claimed that his counsel would not file the motions he told him to file or follow his directions as to how to proceed with the case. Hentges filed motions without his counsel's involvement. He even admitted to bringing a "civil lawsuit against [his counsel]." On one occasion,

Hentges refused to enter the courtroom for a hearing, accusing the prosecutor of committing a crime against him and informing the district court that he had filed a lawsuit naming the judge as a defendant. On other occasions, he failed to appear for hearings. He also threatened to sue court staff for denying him his rights. After firing his counsel, Hentges reapplied for a public defender, and the public defender's office reassigned counsel. But Hentges refused to be represented by him. When Hentges was assigned a different public defender after trial, he refused to speak with anyone from the public defender's office.

Based on this record, the district court demonstrated great patience in its interactions with a defendant who seemed completely unwilling to permit the timely, orderly resolution of the merits of the case. We conclude that the postconviction court did not clearly err when it found Hentges's conduct sufficiently dilatory to constitute a forfeiture of Hentges's right to counsel.

## II.

Hentges contends that testimony of T.M., the Minnesota child-support enforcement supervisor, that Hentges paid $20,000 to get out of jail was unfairly prejudicial and violated his right to a fair trial. Hentges did not object to this testimony at trial or request a curative instruction. When a defendant fails to object to the admission of evidence, our review is under the plain-error standard. *See* Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002).

9

The postconviction court found the admission of the testimony to be error but that the error was not plain and did not affect Hentges's substantial rights. But it did not identify why it was error to admit T.M.'s testimony. Hentges appears to argue that the error was that the testimony was unfairly prejudicial and not relevant. But based on our review of the record, it appears that Hentges's examination of T.M. opened the door to this testimony. *See State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (stating that opening the door occurs when a party introduces certain material that permits the opposing party to respond with inadmissible material in order to avoid an unfair advantage). During his cross-examination of T.M., Hentges raised the fact that he had paid money to the State of Colorado in 2007 and asked T.M. about that payment. T.M. responded that she had learned that the payment was part of an "asset settlement" and that Hentges was credited for part of the "$20,000 bail[] for the alimony that was owed." The prosecutor objected to the line of questions, and the district court sustained the objection. Hentges's cross-examination of T.M. ended without further exploration of this topic. But Hentges recalled T.M. in his case and again asked her about the $20,000 payment, which elicited her response that the "20,000 was so you could get out of jail."

Even if the admission of the testimony was error, it did not constitute plain error. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Hentges has not identified any applicable caselaw or rule that was violated by admitting this testimony. Because Hentges has not established the first two prongs of the plain-error test, we need not address whether the

admission of this testimony affected his substantial rights. *See State v. Banks*, 875 N.W.2d 338, 346-47 (Minn. App. 2016), *review denied* (Minn. Sept. 28, 2016).

## III.

Over Hentges's objection, the district court instructed the jury that the Colorado child-support order and the registration of the Colorado order in Minnesota are "legally valid and enforceable," as a matter of law. The postconviction court concluded that "the jury was free to find that, despite the legally valid and enforceable order, Hentges had no obligation to pay child support based on his defense that he had pre-paid the child-support obligation. The instruction left that element to the jury's decision." On appeal, Hentges contends that this instruction denied him the right to have the jury decide the elements of the offense beyond a reasonable doubt.

We apply an abuse-of-discretion standard to a district court's jury instructions. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). A district court has "considerable latitude" in the selection of language for the jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

Hentges's argument that the district court directed a verdict fails because he never availed himself of the opportunity to timely appeal either order. "As a general rule, a party's failure to appeal the issuance of a court order precludes a collateral attack on that order in a subsequent proceeding." *State v. Romine*, 757 N.W.2d 884, 889-90 (Minn. App.

11

2008) (concluding that a defendant who did not challenge the issuance of an OFP could not collaterally attack its validity in an appeal from the final judgment of conviction for violating it), *review denied* (Minn. Feb. 17, 2009). Because Hentges failed to successfully appeal the Colorado order and the Minnesota registration order, the instruction that the orders are valid is a correct statement of the law.

Hentges also contends that the jury instruction amounted to a directed verdict. Hentges claims that his case is similar to *State v. Moore*, where the district court instructed the jury that the loss of a tooth is the permanent loss of the function of a bodily member. 699 N.W.2d 733, 737 (Minn. 2005). The supreme court concluded that this effectively instructed the jury that the element of "great bodily harm" was established, violating the requirement that the jury find the elements of the offense beyond a reasonable doubt. *Id.*

This instruction did not amount to a directed verdict. The state asked for the instruction because Hentges relentlessly refused to abide by the district court's admonitions to not pursue questions or argument on the topic of the validity of the Colorado child-support order or the Minnesota registration order. The instruction merely advised the jury that the orders were "legally valid and enforceable." Because the instruction fairly and correctly stated the law and because it did not take an element of the crime out of the factual determinations the jury had to make, the district court properly exercised its discretion by giving the instruction.

**IV.**

Hentges contends the state did not provide sufficient evidence that he failed to provide non-monetary care to his children. The postconviction court concluded that the

12

evidence was sufficient to convict Hentges, if *State v. Nelson* applied. 842 N.W.2d 433 (Minn. 2014). In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

The supreme court in *Nelson*, which was decided while Hentges's case was pending appeal, held that a "felony conviction under Minn. Stat. § 609.375, subds. 1, 2a(1) (2012), which criminalizes a person's omission and failure 'to provide care and support' to a . . . child" requires the state to prove a defendant failed to provide both care and support to his children. 842 N.W.2d at 435. Generally, "new rules apply to (1) cases pending on direct appeal at the time of the new rule's announcement, and (2) cases arising after the rule is announced." *State v. Kelley*, 855 N.W.2d 269, 283 (Minn. 2014) (quotation omitted). New rules, generally, "do not apply to defendants whose convictions were final at the time the new rule was announced." *Id.* A case is still pending, and not final, "until such time as the availability of direct appeal has been exhausted and the time for a petition for certiorari has lapsed, or a petition for certiorari with the United States Supreme Court has been filed and finally denied." *Spears v. State*, 725 N.W.2d 696, 700 (Minn. 2006). Because the supreme

13

court decided *Nelson* while Hentges's case was pending direct appeal, we conclude that *Nelson* applies to his case.

In *Nelson*, the district court denied Nelson's motion to dismiss the complaint for failing to allege that he had failed to provide both care and support to his children. 842 N.W.2d at 435. Nelson was not permitted at trial to offer evidence of his non-monetary care of his children. *Id.* This court affirmed Nelson's conviction, concluding that the phrase "care and support" referred exclusively to a person's financial obligation of support. *State v. Nelson*, 823 N.W.2d 908, 909 (Minn. App. 2012), *rev'd*, 842 N.W.2d 433. The supreme court reversed, holding that "[t]he term 'care' in the care-and-support statute . . . refers to those nonmonetary legal obligations that require watchful oversight, attentive assistance, or supervision of a spouse or child."[1] *Nelson*, 842 N.W.2d at 438, 444. And the state did not present any evidence that Nelson knowingly omitted and failed to provide care to his children. *Id.* at 444.

Here, there is evidence that Hentges not only failed to provide monetary support for his children but that he also failed to provide non-monetary care for them. Although he was awarded parenting time in the dissolution, Hentges testified he had not seen his children in almost four years and had not communicated with them in more than two and one-half years. For nonsupport of a child to be a felony, the state had to prove that the violation occurred for more than 180 days. Minn. Stat. § 609.375, subd. 2a (2010). Here,

---

[1] Minnesota replaced "care and support" with "court-ordered support" in the 2014 version of Minn. Stat. § 609.375, effective August 1, 2014, and applying to crimes committed on or after that date. 2014 Minn. Laws ch. 242, § 1, at 804.

the two and one-half years that Hentges did not communicate with his children prior to trial is sufficient to prove his failure to provide care over the required period of time. Based on the evidence, a jury could reasonably conclude that Hentges failed to provide care and support to his children. The postconviction court did not abuse its discretion in its order.

## V.

In the addendum to his pro se supplemental brief, Hentges filed a motion requesting that his conviction be set aside due to several acts of "fraud upon the court," pursuant to Minn. R. Civ. P. 60.02. But the Minnesota postconviction relief act is the exclusive remedy for challenging the validity of a conviction "unless it is inadequate or ineffective." Minn. Stat. § 590.01, subd. 2 (2016). Hentges's claims challenge the validity of his conviction, and he has not established that he is entitled to relief under either the Minnesota postconviction relief act or under rule 60.02.

Hentges's fraud arguments in his pro se supplemental brief challenge the amount of his child-support arrearages and the validity of the child-support orders, as well as the truthfulness of the testimony supporting each of the issues addressed above. In his postconviction petition, Hentges did not address his fraud claims that are related to his child-support arrearages and the validity of the child-support orders. "[A] postconviction petitioner is entitled to raise nearly the same breadth of claims that could have been brought in a direct appeal." *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006). But "[i]t is well settled that a party may not raise issues for the first time on appeal from denial of postconviction relief." *Schleicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006) (quotation

15

omitted). For this reason, we decline to address Hentges's claims of fraud relating to his child-support arrearages and the validity of the child-support orders.

Hentges's remaining fraud arguments, which are unsupported in this record, question the truthfulness of the evidence presented against him. When this court reviews the postconviction order, "we examine only whether the postconviction court's findings are supported by sufficient evidence." *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (quotation omitted). Here, there is sufficient evidence in the record to support the postconviction court's findings as discussed in the preceding sections.

**Affirmed.**